### *Callagan and others* v. *Hallett & Bowne.*

THE plaintiffs were pilots of the port of *New-
York.* The defendants, owners of a brig called the
*Neptune.* The vessel had been driven on shore at
*Barnegat*, to bring her from whence safe into *New-
York*, the defendants had agreed to give the plaintiffs
five hundred dollars, and the service having been per-
formed, the present action was instituted to recover
the money.

The declaration consisted of four counts : the first,
an agreement with the captain on behalf of his own-
ers ; the second, on one with the owners themselves ;
the third, work and labour at the request of the de-
fendants ; the fourth, a *quantum meruerunt.* To this
the defendants pleaded the general issue. A case was

May Term, 1803.

reserved for the opinion of the court whether the action was maintainable or not.

*Pendleton,* for the plaintiffs. It has long been settled, that the master may, when in distress, hypothecate either vessel or cargo for necessaries to prosecute his voyage. *Moor,* 918.\* 2 *Ld. Ray.* 984.† *Noy,* 95. *A fortiori,* he may bind to his engagements, when the vessel must otherwise be lost. If then the action be maintainable, this can be the only tribunal; it cannot be in the admiralty, and the reason is, that court has jurisdiction in cases of hypothecation on account of the extraordinary interest, and because the contract is on the credit of the ship or goods and their safe arrival. Owners are not liable in the court of admiralty. 6 *Mod.* 2. They must then be answerable here. Whether the contract was with the owners or the master is immaterial; for the contract of the master is obligatory on the owner. 1 *Moll.* 331. sec. 14, 15. If the master ransoms, the remedy is against the owner. *Cornu* v. *Blackburn, Doug.* 619. and in *Yates* v. *Hall,* the plaintiff recovered on the engagement of the master against the owners, though the vessel, for payment of the ransom of which he remained as a hostage, was given up in satisfaction of the ransom bill. In addition to these authorities, the laws of the state render the contract valid.

\* *Barnard* v. *Bridgman.*

† *Johnson* v. *Shippen.*

*Boyd,* contra. Principles of general policy and the invariable leaning of the court are against this action; the words of our law are conclusive. The species of contract in which the master can bind his owners, and the distinctions from this case will appear to the

court in 1 *Salk.* 35. 2 *Dall.* 194. 1 *Bro. Pa. Ca.* 284.
and *Abbot on Shipping.*

*Per Curiam.* The defendant moves in arrest of judgment. The declaration states,

1st. That the defendants were owners of the brig *Neptune ;* that the brig, when at sea and bound for *New-York*, was in distress; that the plaintiffs contracted with the master to bring her safe into port for 500 dollars ; that they brought her in accordingly.

2d. The like against owners.

3d. The usual counts on a *quantum meruit.*

Three questions are raised :

1st. , Whether the action is maintainable on the first count, which involves two questions :

1. Could the master, by such contract, bind the owners ?

2. Was the contract lawful, the plaintiffs being branch pilots belonging to the port of *New-York ?*

2d. Can the defendant move in arrest of judgment after attending the execution of the writ of inquiry, and examining witnesses ?

3d. May not the court order an inquiry *de novo* on the third count, in the event of the first and second being held bad ?

The question of the right of the master to bind owners, it is not necessary to decide.

The legality of the contract is most material.

The act for the regulation of pilots and pilotage for the port of *New-York* (7 sess. ch. 31. s. 2 and 3.) makes it *the duty* of pilots to give all the aid and assistance in their power to any vessel appearing in distress on the coast, and for neglect or refusal subjects them to a fine or forfeiture of their places; but for the encouragement of such pilots who shall distinguish themselves by their activity and readiness to aid vessels in distress, it enacts, that the master or owner of such vessel shall pay to such pilot, who *shall have exerted himself for the preservation of such vessel*, such sum for extra services as the master or owner and such pilot can agree upon; and in case no such agreement can be made, the master and wardens of the port are empowered to ascertain the reasonable reward.

It being made *the duty* of the pilots to assist the defendants' vessel, it was oppression in them to exact the stipulation in question. It would lead to abuses of the most serious nature if such contracts, founded on such considerations, were held to be legal. There are several cases in the books tending to show the leaning of courts of justice against the oppressions of persons in public trust, and the illegality of exacting previous reward for doing their duty. The law allows them sufficient compensation for extraordinary exertion after the service performed; which shows it was an object with the legislature to prevent undue

*Bridge* and *Case, Cro. Ja.* 103. *Stolesbury* v. *Smith,* 2 *Burr.* 924.

advantages being taken.  We are, therefore, of opin- May Term, 1803. ion, the first and second counts are bad, as contrary to public policy and the spirit of the act.  As to the second question, whether it be too late to move in arrest of judgment after attending the execution of the writ of inquiry, we are of opinion the authorities adduced do not apply to questions on the merits, but 1 *Sell.* 528.
2 *Wils.* 380. only to formal defects in the pleadings.

On the third point we are of opinion, on the authority of *Eddowes* v. *Hopkins,* in *Douglas,* that the plaintiff may, on payment of costs, have (if he solicits it) an inquiry *de novo* on the *quantum meruit,* reserving the question, however, whether, on such inquest, he shall be entitled to more than his legal allowance, not having made the prescribed appeal to the master and wardens.

## AUGUST TERM, 1803.