RUDOLPHUS ROUSE, plaintiff in error, *v.* THE COUNTY OF PEORIA, defendant in error.

*Error to Peoria.*

The correct rule of practice is, not to entertain a motion in arrest of judgment after the overruling of a demurrer to the declaration, and the fact whether the demurrer was argued or not, will not vary the application of the rule.

A contract for the support of a pauper, or for medical services, will not be obligatory upon a county, unless the overseers of the poor, or a majority of them, shall, in the first instance, make such a contract, and report the same to the County Commissioners' Court for approval. The Court may then approve, increase, or diminish the sum agreed to be paid by the overseers, according to circumstances, and make an appropriation for its payment out of the county treasury. If the overseers, or the Court should refuse or neglect to perform their respective duties in the premises, the remedy, in the first instance, is by a writ of *mandamus*, and not by suit in the Circuit Court against the county; and by appeal, if necessary, from the final order or judgment of the County Commissioners' Court.

ASSUMPSIT in the Peoria Circuit Court, brought by the plaintiff in error against the defendant in error. The cause

was heard at the October term 1844, the Hon. John D. Caton presiding. There was a demurrer to the declaration, which was overruled, and the defendant abiding by the demurrer, the plaintiff took judgment for want of a plea. On an inquest of damages, a verdict was returned in favor of the plaintiff for $116, and judgment was rendered thereon by the Court. A motion in arrest of judgment was made and sustained, and judgment rendered by the Court against the plaintiff for costs.

The special causes of demurrer, the reasons for an arrest of judgment, and other proceedings in the cause are set forth in the Opinion of the Court.

*H. O. Merriman,* for the plaintiff in error, made the following points:

1. The Court had original jurisdiction of the suit. *Vermillion Co.* v. *Knight,* 1 Scam. 97, and the Acts there referred to.

2. One overseer can bind the County. Laws of 1838-9, 139; *Palmer* v. *Vanderburgh,* 3 Wendell, 183; *Todd* v. *Birdsall,* 1 Cowen, 260; *Lee* v. *Deerfield,* 3 New Hamp. 290; *Cargill* v. *Wiscassett,* 2 Mass. 548; *Doggett* v. *Dedham,* Ib. 564; *Warren* v. *Isleborough,* 20 Maine, (7 Shepley,) 445; *Pittstown* v. *Plattsburgh,* 18 Johns. 418; Story's Agency, §§ 304, 305.

3. No report of matters of this kind required by the Act of 1839. Laws of 1838-9.

4. If a report is required by law, it is only directory, and cannot affect rights of third persons. *King* v. *Butler,* 15 Johns. 281; *Wade* v. *Salem,* 7 Pick. 333; Story's Agency, 314.

5. On motion in arrest of judgment, the promise laid in the declaration will be presumed to be an express promise. *Beecker* v. *Beecker,* 7 Johns. 99; *Elting* v. *Vanderlyn,* 4 do. 238. No motion of this kind should be entertained after a demurrer to the declaration. *Edwards* v. *Blunt,* 1 Strange, 426; *Creswell* v. *Packham,* 6 Taunton, 650.

*J. B. Thomas*, for the defendant in error.

I. The declaration shows no cause of action against the county.

1. The justices of the peace in each justice's district in the several counties of this State, in conjunction with some person appointed by the County Commissioners' Court, constitute the overseers of the poor. Laws of 1838–9, 138; Gale's Stat. 523, section one, and part of section four repealed by section seven of Act of 1839; Ib. 524; Laws of 1841, 190.

2. These overseers must, in every district, consist of at least three persons, and in some of four. Gale's Stat. 400, § 3.

3. The act of any one of these overseers is null and void, and therefore the county, in this case, is not liable to pay for services rendered to the pauper, Styles, by the request of Hamlin alone. *Trustees of Williamsburgh* v. *Trustees of Jackson*, 11 Ohio, 40. In the case of *Downing* v. *Rugar*, 21 Wend. 178, it was held that the assent of both overseers was necessary; but where one acted in a case of pressing emergency, it was considered that the assent of the other might, for the furtherance of the ends of justice, be presumed. Such presumption is, in the case at bar, negatived by the averment in the declaration that Hamlin was the only acting overseer of the poor in his district. *Wicklaer* v. *Rockfeller*, 6 Cowen, 276, 279, 280; Story on Agency 44–5, § 42; *First Parish in Sutton* v. *Cole*, 3 Pick. 243; *Damon* v. *Granby*, 2 do. 352; 6 do. 198; 12 Mass. 194–5.

In cases of public agents authorized to act jointly, all must join or the act is invalid, although the majority of a committee may act legally, &c. Co. Litt. 181, C.; Comyn's Dig. "*Att'y.*" C. 11; 2 Rolle's Abr. "*Feoffment*," 8; 1 Bac. Abr. "*Authority*," C. 319; *Guthrie* v. *Armstrong*, 5 Barn. & Ald. 628.

4. The law requiring at least three overseers, and there being but one, as the declaration shows, he has no power to act. *Downing* v. *Rugar*, 21 Wend. 178, *ubi supra*.

5. The contract with the plaintiff was illegal and void, as not being made in the mode appointed by law. *Gomley* v.

*Allen*, 5 Cowen, 644; *Hull* v. *Overseers of Oneida*, 19 Johns. 256, 259; Comyn's Dig. "*Att'y*." C.; Ib. C. 13, and in note (*r*); *Evarts* v. *Adams*, 12 Johns. 352; *Voorhis* v. *Whipple*, 7 do. 89; *Flower* v. *Allen*, 5 Cowen, 654, 664, 670; Story on Agency, §§ 165, 170, 172; Contra, *ex parte* Dow, 1 Cowen, 205, which is overruled by the case in 4 Cowen, 141.

6. If the charge is a legal one, the remedy is by *mandamus*. 19 Johns. 259; *ex parte* Nelson, 5 Cowen, 423; *Adams* v. *The Supervisors of Columbia Co.* 8 Johns. 323, 326.

The plaintiff's authorities do not controvert any of these positions.

In the case of *Vermillion Co.* v. *Knight*, 1 Scam. 97, the contract was made under a law giving exclusive supervision of the poor to the County Commissioners' Courts. But those Courts are to judge of, and settle all county matters. In that case, they did so. *Palmer* v. *Vandenburgh*, 3 Wend. 196.

The order to be made by a justice of the peace, by the law of New York, is analagous to the appropriation, &c., by the County Commissioners' Court under our law. Presumption in this case is rebutted by the declaration alleging Hamlin to be the only acting overseer.

In the cases from 20 Maine, 445—1 Cowen, 260—3 New Hamp. 290, the selectmen had absolute power to afford relief to paupers, the order of one being made, assent of others presumed. Here it is otherwise; there is no such unlimited discretion, the taking and reporting of the bond would evidence assent, and moreover, the presumption of assent of justices is rebutted by *narr*. *King* v. *Butler*, 15 Johns. 281, is explained by 6 Cowen, 276.

He says plaintiff need not look to see whether agent has made his report, &c. But the law is otherwise; acting with an agent, he must look into the agent's authority. *Wade* v. *Salem*, 7 Pick. 333; Story on Agency, 314.

To show that express promise will be presumed after verdict, he has cited *Beecker* v. *Beecker*, 7 Johns. 103, and *Elting* v. *Vanderlyn*, 4 do. 237. *Contra*, 12 Johns. 352; 19 do. 256; 5 Cowen, 654.

II.   1.   The declaration showing no cause of action, the judgment was properly arrested.   Where there are several counts in *narr.* and one or more are defective, and a general verdict is rendered, judgment should be arrested.   6 T. R. 377; 2 Mass. 406; 11 do. 59; Doug. 377; 12 Wend. 374; 2 Mass. 50, 53.

2.   After judgment, a man may allege any thing on the record in arrest of judgment, which may be assigned for error after judgment.   2 Rol. 716, C. 30, 45; 1 Salk. 77; Gould's Pl. 496.

As to arresting judgment on return of the inquiry, see 1 Eng. Com. Law R. 650; 1 Strange, 425; 2 Mass. 326; 1 Caines, 104.

The propriety is indicated of first raising the objection to the *narr* on demurrer as a matter of convenience.   It was done in this case.

*Merriman*, in reply, cited *Salem* v. *Andover*, 4 Mass. 441; *Downing* v. *Rugar*, 21 Wend. 178; *Olney* v. *Wicks*, 18 Johns. 123; *Cornwall* v. *Gould*, 4 Pick. 446; Minot's Dig. title *"Amendment."*   As to the motion in arrest of judgment, 2 Duer's Pr.

The Opinion of the Court was delivered by

YOUNG, J.*   This was an action of *assumpsit*, brought by Rudolphus Rouse against the county of Peoria, to the May term of the Peoria Circuit Court, A. D. 1844, on a special agreement made with Ralph Hamlin, an overseer of the poor for Peoria precinct, which is a justice's precinct, for the sum of $300, which he alleges is due and unpaid by said county, for medical services, labor and skill, performed and employed by the said plaintiff as a physician, in the curing of one Styles, who was a settled pauper in the said precinct for the six months next preceding the rendition of said services, for which the plaintiff insists that the county of Peoria is liable.

---

* PURPLE, J., having been of counsel, did not sit in this case. WILSON, C. J., was not present at the argument, and gave no opinion.

The declaration contains three counts to which there was a demurrer, and the following causes assigned as special causes of demurrer, to wit:

1. Because the overseer of the poor had no authority to bind the county by contract, except in conjunction with the justices of the peace of the district.

2. Because it does not appear that the overseers of the poor ever made any report to the County Commissioners' Court of the plaintiff's claim in the premises; or that the said Styles was a pauper, or entitled to any relief under the provisions of the third section of the Act of Febuary 19, 1839.

3. Because the county cannot by law make provision for the payment of expenses incurred in the maintaining of paupers, except upon the report of the overseers of the poor.

4. Because the action of *assumpsit* cannot be maintained against the county under the circumstances, nor for the causes stated in the declaration; that the overseers of the poor, and not the County Commissioners, have the exclusive control of the paupers, and are bound to make report to the County Commissioners' Court, and that after such report is made, that Court can only be compelled by writ of *mandamus* to perform their duty, in making the proper appropriations. To this demurrer there was a joinder by the plaintiff, and the demurrer afterwards overruled by the Court.

The defendant having abided by the demurrer, the plaintiff took judgment for want of a plea; a writ of inquiry was awarded, an inquisition of damages had by the sheriff, and a verdict returned in favor of the plaintiff for the sum of $116, in damages.

The defendant then moved in arrest of judgment, for the following reasons, to wit:

1. Because, by the law, the said Ralph Hamlin alone, had no power or authority to make any contract to bind the county;

2. Because an overseer of the poor can do no act binding the county, except in conjunction with his associates as a board;

3. Because it does not appear that the said Hamlin, or the overseers of the poor, confided the care of the said Styles to a householder, and took a bond, specifying the sum to be paid by the county for his keeping, &c., according to the second section of the Act of February 2, 1839;

4. Because the declaration does not state that the said Hamlin, or any overseer or overseers, ever made any report in relation to the alleged pauper to the County Commissioners' Court, as required by the third section of the same Act;

5. Because the County Commissioners' Court cannot legally make any appropriation for the support of paupers until after the overseers shall have reported as aforesaid;

6. Because the County Commissioners' Court, in the first instance, has exclusive jurisdiction over the subject matter of this suit, and are bound to exercise a discretion in making the proper appropriations;

7. Because the County cannot be sued in this Court, upon any contract made by the overseer of the poor, the only remedy being by appeal from the order of County Commissioners' Court in case they refuse to make the proper appropriation;

8. Because this Court has no original jurisdiction of this suit; and

9. Because it is not shown by the declaration, that the said Styles is or was a pauper, by six months' residence in the county, or otherwise entitled to relief.

This motion in arrest of judgment was sustained by the Court, and a judgment rendered in favor of the defendant for costs.

The following are assigned as errors for the reversal of said judgment in this Court, to wit:

1. The Circuit Court erred in sustaining the defendant's motion in arrest of judgment;

2. The Circuit Court erred in rendering judgment against the plaintiff for the costs of the suit;

3. The Circuit Court erred in refusing to render judgment for the plaintiff in accordance with the return of the sheriff, and verdict of the jury, upon the writ of inquiry issued in said cause, for the sum of $116, as found by said jury;

Rouse *v.* The County of Peoria.

4. The Circuit Court erred in sustaining a motion in arrest of judgment for a supposed defect in the declaration, after a demurrer to the declaration had been filed and overruled.

This whole case, as we understand it, presents but two questions, necessary to be considered: *First,* in regard to the correctness of the practice in allowing a motion in arrest of judgment, after a demurrer to the declaration overruled; and, *Secondly,* in relation to the right of the plaintiff to recover against the county, under the facts and circumstances stated in the pleadings.

As to the first question, we have no doubt, but that according to the authorities, the correct rule of pratice is, not to entertain a motion in arrest of judgment upon the overruling of a demurrer to the declaration; and it makes no difference in the application of the rule in such a case, whether the demurrer was argued or not. *Edwards* v. *Blunt,* 1 Strange, 426; *Creswell* v. *Packham,* 6 Taunton, 650. In the latter case, the declaration contained three special counts, and the money counts. The defendant demurred, alleging "that the said declaration and the matters therein contained, were not sufficient in law, &c." The plaintiff joined in demurrer. There was no argument, and the Court decided generally, that the declaration was sufficient.

A writ of inquiry was executed, and general damages found for the plaintiff.

Sergeant Haywood obtained a rule *nisi* to arrest the judgment on certain objections to the money counts. Sergeant Best insisted *contra,* that no motion in arrest of judgment could be entertained after judgment on the demurrer, and cited the case of *Edwards* v. *Blunt,* 1 Strange, 426.

*Per Curiam.* "The doctrine in the case of *Edwards* v. *Blunt,* 1 Strange, 426, is, that where the defendant might, on arguing the demurrer, have availed himself of the exceptions, he shall not afterwards move in arrest of judgment.

The defendant might have taken this exception in substance on the demurrer, for he might have objected to the vicious

Rouse *v.* The County of Peoria.

counts, and have obtained judgment on them; no damages could ever have been assessed thereon, and he is not without remedy by writ of error. It is more convenient to adhere to that practice, than to indulge the defendant with relief now on motion. Though I am aware of the new view, in which the objection presents itself, namely, that judgment cannot be with propriety entered for these general damages, and yet it is more convenient to compel parties to come, in the first instance, with every objection." Rule discharged.

This case is different from one, where a judgment by default is taken in the first instance, and no demurrer is opposed by the defendant to the plaintiff's declaration. In that case, the defendant does not waive his right to move in arrest of judgment, for substantial defects in the declaration, notwithstanding he may have attended the execution of the writ of inquiry. *Callegan* v. *Hallett*, 1 Caines, 104; Graham's Practice, 642.

We think the correct rule was laid down by the Court in *Creswell* v. *Packham*, and ought not to be departed from in practice in the Circuit Courts. But as such a decision in this case would subject the parties to great inconvenience and expense, by sending them back to the Court below, when no possible good can be accomplished by so doing, it will be better, in this instance, to let that question go, and to consider this case rather as an exception to the rule, than a departure from it, and to proceed at once to a decision upon the merits.

The fifth section of the Act relative to paupers, approved March 3, 1845, Revised Statutes of 1845, page 403, which is substantially the same as the corresponding Act of 1839, cited by the counsel in the argument, provides, that the justices of the peace in each justices' district, in conjunction with such other person as the County Commissioners in the several counties in this State may appoint, shall be, and are hereby made overseers of the poor, and are vested with the entire and exclusive superintendence of the poor in their respective districts, excepting in cases of corporate towns or cities, to which such superintendence and jurisdiction shall be by law granted."

The sixth section provides, that "it shall be the duty of said justices within their respective districts, and the person appointed as aforesaid, diligently to inquire after all such persons as are unable to earn a livelihood, in consequence of any bodily infirmity, idiocy, lunacy, or other unavoidable cause, and to provide for them the necessary comforts of life, by confiding the care of such poor person or persons to some moral and discreet householder or householders in the district of sufficient ability to provide for them. And any person to whom the care of such poor person shall be committed, shall execute a bond to the county in which such poor person shall reside, conditioned that he will treat such poor person with humanity, and afford to him or her the necessary attention and comforts of life, fitted to his or her condition. Said bond shall set forth the sum to be given by said county for keeping such poor person or persons."

The seventh section provides, that "said overseers shall, at each session of the County Commissioners' Court, make a full report of their actings and doings under this Act, and return a list of all the poor in their respective districts, specifying the age, sex and infirmities of each."

The eighth section provides, that "upon the making of said report, it shall be the duty of the several County Commissioners' Courts to make such appropriations as will justify the person having the custody of any such poor person in affording to him or her suitable clothing, and such comforts as may be suitable to their state and condition."

The ninth section provides, that "any sum set forth in the bond executed to any county as aforesaid, may be lessened or increased at the discretion of said county, without affecting, in either case, the validity of the bond."

Thus, it will be seen that the justices of the peace in such justices' district are constituted, *ex officio*, overseers of the poor of such district, in conjunction with an overseer of the poor to be appointed by the County Commissioners' Court; and these overseers are together to exercise a general superintendance over the poor for the district.

In this case, Hamlin was the overseer appointed by the County Commissioners' Court for the Peoria district; but it

does not appear from the record that any of the justices of that district acted with him in making the contract with the plaintiff, Rouse.   On the contrary it appears, that whatever agreement was entered into was made by Hamlin and Rouse alone.

This was an unauthorized exercise of power by Hamlin, as no such agreement could have been legally made without the concurrence of the justices of the district, acting in the character of overseers of the poor, or at least a majority of the whole taken together, the overseer appointed by the County Commissioners' Court inclusive; as this was not done, we hold that the contract is not obligatory upon the county.

Again, it is required by the seventh section, as above quoted, that the overseers of the poor shall report their proceedings to the County Commissioners' Court; and by the eighth section, that Court is required to make such appropriations for the support of such poor persons, to be thus reported as may appear under the circumstances, to be reasonable and proper.

No report has been made in this case by the overseers of the district, and, consequently, no appropriation has been made by the County Commissioners' Court, to meet the demand of Rouse for the medical services rendered to the ·pauper Styles, at the request of Hamlin.   How could this have been otherwise under the circumstances?

We are therefore of opinion, that before a contract in such a case can be properly considered as obligatory upon the county that the overseers of the poor, or a majority of them, should, in the first place, make the contract with the person who is to support or render service to the pauper; that a report of such contract should be made to the County Commissioners' Court, and that the County Commissioners' Court should either approve, increase, or diminish the sum agreed to be paid by the overseers, and make an appropriation for its payment out of the county treasury.   If the overseers or the Court should refuse or neglect to perform their respective duties in the premises, the remedy, in the first instance, is by a writ of *mandamus,* and not by suit, as in this case in

the Circuit Court against the county; and by appeal, if necessary, from the final order or judgment of the County Commissioners' Court.

It was doubtless intended by the legislature, that the County Commissioners' Court should exercise a general supervision and control over the acts of the overseers of the poor, and especially, in relation to the payment of all sums of money for the support of paupers out of the county treasury. Any other construction of the Act in question, might lead to the most injurious consequences to the best interests of the county. If a single overseer of the poor may bind the county to the payment of three hundred dollars, by a single contract, as in this case, it would not take many such overseers, or many such contracts to bankrupt the most wealthy and prosperous county in the State.

The judgment of the Circuit Court is affirmed, with costs.

*Judgment affirmed.*