EDWARD D. McCARTHY, Appellant, *against* ROBERT BONYNGE, Respondent.

(Decided March 14th, 1884.)

The rate of compensation at which an official stenographer is bound to furnish, with reasonable diligence, copies of his stenographic notes of testimony or other proceedings, being fixed by statute, an agreement to pay a greater rate for furnishing copies more expeditiously than would otherwise be done cannot be upheld.

APPEAL from a judgment of the City Court of New York affirming a judgment of that court entered upon the verdict of a jury.

The action was brought to recover treble damages for alleged excessive fees received by the defendant as an official stenographer, for a copy of stenographic notes of the testimony in a cause in the court of Oyer and Terminer. At the trial, the jury found a verdict for defendant. From the judgment entered thereon, plaintiff appealed to the General Term of the City Court, which affirmed the judgment; and from this decision of the General Term plaintiff appealed to this court.

*Edward D. McCarthy*, appellant, in person.

*Thomas Allison*, for respondent.

CHARLES P. DALY, Chief Justice.—The code fixes the compensation of official stenographers for copies of their stenographic notes fully written out of testimony or other proceedings, in a Court of Oyer and Terminer, at 10 cents per folio (§ 3311.) It also provides (§ 86) that each stenographer must upon request, furnish the defendant in a criminal cause with such a copy, with all reasonable diligence, upon the payment to him, by the person requiring the same, of the fees allowed by law. And it further pro-

McCarthy v. Bonynge.

vides (§ 3280) that each public officer—and the stenographers appointed by the court, come under that head (§ 82) —upon whom a duty is expressly imposed by law, must execute the same without fee or reward, except where a fee or compensation is expressly allowed, and where it is allowed by law for any service, that the officer shall not charge or receive a greater fee or reward for that service than is so allowed.

The defendant testified that the plaintiff McCarthy wanted the minutes by the following day, and he told him that it was an impossibility; that McCarthy then said: "Can I have them by Thursday?" the interview being on Tuesday; and the defendant replied: "I don't know, but if you are willing to pay the *usual rates of reporting*—25 cents a folio—and I employ 'amanuenses,' I will endeavor to get them out for you. The code allows me but 10 cents. I am now engaged in getting out regular work and I cannot stop my work to get these out for you." Whereupon McCarthy said: "I will pay 25 a folio if you will let me have the minutes by Thursday morning." Whereupon the defendant said: "I will let you have the minutes on Thursday, if you will give me your word of honor that you will pay the bill when the work is done and the bill is presented;" and McCarthy said, "I do."

The agreement to pay 25 cents per folio the plaintiff denied, alleging that what he agreed to do was to be personally responsible for the payment of the bill. He testified that he told the defendant twice that he would pay him his legal fees, saying that so far as he was concerned it was a work of charity; and that the defendant said he would make his bill even less than the usual charge.

As the jury, however, rendered a verdict for the defendant, we must assume that this agreement was made, to pay 15 cents a folio more than the law allowed, if the copy was made and furnished, as it was, within the time specified; and the question presented in the case is a question of law, whether such an agreement can be upheld. I think it cannot. It has been held in certain cases, where the ser-

vice is not one which the public officer is required by law to perform, nor one for which the law fixes a fee, that then the officer may make a special agreement for his compensation (*Murtagh* v. *Connor*, 15 Hun 488 ; *McKeon* v. *Horsfall*, 88 N. Y. 429); but these decisions do not apply to the present case, for here, the fee which a stenographer may charge for the service rendered is fixed by law. It is a service which is especially imposed upon the official stenographer by statute, and one for the performance of which the statute declares he shall not charge or receive a greater fee or reward than is allowed by law. The ground taken in the present case is that the defendant was under no obligation to furnish a copy of the minutes of the testimony within two days ; that he is required by the statute to furnish it only "with reasonable diligence," and this did not require him to employ others, and to work at night, as he did, to get the copy made out within the time required; briefly, that what he did was not imposed upon him by law; that no compensation was fixed for the kind of service he rendered ; and that he had a right to make an agreement for additional compensation for such a service.

The answer to the distinction here made by him is the decision of the Court of Errors, in *Hatch* v. *Mann* (15 Wend. 44). In that case, Hatch applied to Mann, who was a constable, to arrest a debtor, and Mann, upon Hatch's promise of being well paid for doing so, employed another person to go with him to the debtor's house, at three o'clock in the morning, where they watched until daybreak, and by that means succeeded in arresting the debtor. The service was proved to be worth $1.75, and Hatch refusing to pay it, Mann, the constable, sued him in a justice's court, and recovered. This judgment was affirmed, upon appeal to the Common Pleas and to the Supreme Court (*Hatch* v. *Mann*, 9 Wend. 262), but was reversed in the Court of Errors (*Hatch* v. *Mann*, 15 Wend. 262).

The affirmance of the Supreme Court was put upon the ground that the arrest of the debtor was understood by both parties to require extraordinary efforts beyond those

McCarthy v. Bonynge.

which an officer was strictly bound to make, or which could legally be required from him; which was substantially what the official stenographer sets up in the present case. The Supreme Court said that, as the plaintiff watched most of the night and finally arrested the debtor, there was a good and legal consideration for the promise to pay what this extra service was worth; but the Court of Errors reversed the judgment of the Supreme Court, upon the express ground that this reasoning was not tenable in a case where the compensation is fixed by law, and that such an argument could not be sustained.

The chancellor said that the framers of the statute were not chargeable with the absurdity of supposing that the compensation prescribed in the fee bill would be full and adequate to the officer in every case; but to prevent extortion and oppression on the part of public officers, and the interminable litigation which would necessarily arise if the amount of their compensation or the value of their services was dependent upon the circumstances of each particular case, a specified allowance was fixed by law, which, taking one case with another, was deemed a fair compensation; that if it was more than the service was worth, in one class of cases, the officer had the benefit of it, and therefore, it was reasonable that he should sustain the loss, if, in other cases, it was inadequate; that the cases where extra allowances were made to public officers were cases where no compensation was prescribed by statute; that the service performed by Mann, the constable, was that of arresting a party upon a warrant, and though he went in the night time to do it, it was still a part of the same service for which a specific allowance was fixed by law. That it was done at an unusual hour would not warrant the constable in receiving an extra compensation; and that the court could not sanction a recovery founded upon a promise to make a special compensation in such a case. It was, the chancellor said, the settled law from an early day that a promise to pay money to a public officer for doing that which the law would not

suffer him to take any money for, or to pay more than was allowed to him by law for doing, was void, however freely and voluntarily it might appear to have been made; and he quotes the remark from Hawkins' Pleas of the Crown, that "if such promises could be sustained the people would be quickly given to understand how kindly such promises would be taken; and happy would that man be who would have his business done without them" (1 Hawk. P. C. 68 § 4).

Senator TRACY, who delivered the other opinion in the case, said that if a constable for making extraordinary efforts to perform an ordinary official act may also collect by law a compensation beyond what the statute allows for the act, then any officer may do the same; and chancellors and judges may make a business transaction of receiving gratuities, as Lord Bacon did, for expediting, *i. e.*, making extraordinary efforts to dispose of their suits. That a public officer whose fees are prescribed by law may maintain an action to recover an additional sum promised him by a party for doing his official duty, was, he said, a monstrous proposition, fraught with every kind of mischief; and the pretense that it was for extra services would cover every conceivable corruption or extortion.

I see nothing to distinguish this decision from the present case. The compensation for the *official* service here, as in that case, was fixed by law, and the service there, in the performance of the official act, was, as in this case, unusual, and such as was not required by law. The inequality, even, of some services for which the fixed compensation was inadequate and of others where it was more than the value, did not exist, for here the service was the same in each case, and being in part mechanical, the legislature fixed a certain sum per folio, as an adequate compensation for it.

In *Murtagh* v. *Connor* (*supra*), a request made to the sheriff that he would not close the store of the judgment debtor, as it would suspend his business, but that he would employ a person to take charge of the property, for whose

services the debtor said he would pay, was upheld, on the ground that the sheriff, by reason of his levy or authority, had done nothing to bring about such an agreement, which was made at the suggestion of the debtor, and assented to by the officer, because it was essential to the debtor's interest. But the court, in upholding the agreement for the reasons given, was careful to say that the exercise of such a power needed to be closely watched and carefully guarded, in order to prevent it from being made a device for the pecuniary oppression of persons who may be brought within the exercise of official authority.

In *Downing* v. *Marshall* (37 N. Y. 380), it is held that where the statute contains a fee bill, the court has no authority to add items for services not authorized by statute; and in the *Matter of Tinsley* (90 N. Y. 231), that if the stenographer's compensation was regulated by statute, such compensation could only be that which was given by the statute.

In my opinion, the statute having fixed 10 cents a folio as the rate of compensation for copies which the official stenographer is bound to furnish with reasonable diligence, agreements to pay a greater rate of compensation for furnishing copies more expeditiously than would otherwise be done, cannot be upheld, as to do so would let in the mischief and abuses referred to in the cases above quoted. Those who paid the extra compensation would get their copies expeditiously, whilst those who did not would have to wait; for it is significant that the defendant says in his testimony that he said to the plaintiff, " If you are willing to pay the *usual* rates of reporting—25 cents a folio— and I employ 'amanuenses,' I will endeavor to get them out for you. The code allows me but 10 cents." The " usual rates " of reporting are here referred to as contradistinguished from the lawful rates by a stenographer who is a public officer, and who, in addition to his salary, is entitled to charge the parties requiring this particular kind of service a compensation which is fixed by law.

The judgment should be reversed, upon the authorities

cited, and a new trial ordered, with costs to appellant to abide the event.

BEACH, J., concurred.

LARREMORE, J., dissented.

Judgment reversed and new trial ordered, with costs to appellant to abide event.*

---

* The judgment entered upon this decision was affirmed by the Court of Appeals March 2d, 1886.