(165 App. Div. 661)

TEMPLE v. BROOKS.

(Supreme Court, Appellate Division, Third Department. January 15, 1915.)

1. COURTS (§ 190*)—CITY COURTS—APPEALS—REVIEW—QUESTIONS OF FACT.
    On appeal from a City Court, the County Court properly refused to interfere with the trial court's determination on a question of fact as to which the testimony squarely conflicted.
    [Ed. Note.—For other cases, see Courts, Dec. Dig. § 190;* Appeal and Error, Cent. Dig. § 103.]

2. STATES (§ 61*)—LEGISLATIVE STENOGRAPHERS—COMPENSATION.
    Legislative Law (Consol. Laws, c. 32) § 10, providing that the pay of officers or employés, receiving, under that law, a per diem compensation, shall commence at the date of appointment, and that no person or employé shall receive any additional compensation during the term of service for which he shall be appointed, refers to additional compensation from the state, and does not prevent one of the ten general stenographers, appointed by the clerk of the assembly under section 7, from contracting with an outsider for services not interfering with her regular official work, or even with a member of the assembly for services not within her duties as general stenographer.
    [Ed. Note.—For other cases, see States, Cent. Dig. §§ 43, 64; Dec. Dig. § 61.*]

3. CONTRACTS (§ 123*)—LEGALITY—LEGISLATIVE STENOGRAPHERS—ACCEPTING OTHER EMPLOYMENT.
    A contract by a stenographer, appointed by the clerk of assembly, under Legislative Law, § 7, to perform services for outsiders or members of the assembly not included in her official duties is not against public policy, since, if such contract induces her to neglect her official work, the clerk of the assembly may discharge her.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 570–575; Dec. Dig. § 123.*]

4. CONTRACTS (§ 75*) — CONSIDERATION — LEGISLATIVE STENOGRAHERS — PERFORMING OFFICIAL DUTIES.
    Under Legislative Law, § 7, authorizing the clerk of the assembly to appoint ten general stenographers, the duty of such stenographers is not merely to write official letters, but any letter, official or private, that a

member of the assembly may have occasion to write while in attendance at the legislative session, and hence an agreement by a member of the assembly to pay one of such stenographers for writing personal letters was without consideration, even though she did such work nights at her own room or in the rooms of such member.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 273–285; Dec. Dig. § 75.*]

Howard and Lyon, JJ., dissenting.

Appeal from Albany County Court.

Action by Lillian W. Temple against Franklin Brooks. From a judgment of the County Court affirming a judgment of the City Court of Albany in favor of plaintiff and against defendant for $120, with costs, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Arnold, Bender & Hinman, of Albany (Harold J. Hinman, of Albany, of counsel), for appellant.

Porter Lee Merriman, of Albany, for respondent.

SMITH, P. J. Plaintiff was a general stenographer of the assembly in the year 1911, appointed pursuant to section 7 of the Legislative Law, which provides that the clerk of the assembly may appoint ten general stenographers. Defendant was in that year a member of assembly from the city of New York. Plaintiff has recovered upon a contract claimed to have been made between herself and the defendant to pay to her the sum of $100, in consideration that she would do his stenographic work while in attendance at the session of the Legislature. This judgment has been approved by the County Court of Albany County, and from such judgment of approval this appeal has been taken.

[1] It is first claimed that the evidence does not sustain the conclusion reached that such contract was made. The defendant's denial is explicit that he agreed to pay anything therefor. It does not appear to have been the custom for members of the assembly to make such contracts, and the plaintiff swore that she had no other similar contract with any member of the assembly. But the witnesses were before the trial court, their testimony squarely conflicts, and with the determination of the trial court upon this question of fact we are of opinion that the County Court properly refused to interfere.

[2] The defendant further contends that under the law the plaintiff was not authorized to charge any sum in excess of the per diem of $3 allowed under section 10 of the Legislative Law. Under such section it is provided:

"The pay of the officers or the employés who shall receive by this chapter a per diem compensation shall commence at the date of the appointment, and no person or employé shall receive any additional compensation during the term of service for which he shall be appointed."

This statute, however, refers to additional compensation from the state. It clearly does not prevent such employé from making a contract with an outsider for services which will not interfere with her

regular official work, nor even with a member of the assembly for services which are not included within the duties of her office as general stenographer.

[3] Again, it is claimed that such a contract is against public policy. With this contention I am not in sympathy. If by such contract the general stenographer be induced to neglect her official work, the remedy is with the clerk of the assembly, who may discharge her, and the evils which might result from such a contract with a member of the assembly, if such contract be otherwise valid, are in my judgment imaginary rather than real.

[4] The plaintiff's difficulty, however, lies in the fact that the services which were rendered to the defendant were services required in the performance of her duties as general stenographer of the assembly, and with a duty to perform such services for the compensation provided by law any agreement made for further compensation is without consideration and unenforceable. If this be true, it is unnecessary to consider the effect of section 67 of Public Officers' Law, subd. 2 (Consol. Laws, c. 47), because if the contract be without consideration it is equally unenforceable as though against a positive statute.

The contention of the plaintiff is that her duties were simply to act in legislative matters, or matters pertaining to the duties of the defendant as a member of assembly. If such be the law, then without a contract every member of assembly for whom a personal letter is written by a general stenographer at his request is liable to an action upon a quantum meruit, for the services rendered, and every public officer to whom is assigned by law a private stenographer would be compelled to pay extra compensation for every letter written at his request that cannot be related to his official duties. This would be a startling proposition to members of assembly and all public officers, as well as to the public itself. The regular assembly stenographer, hired to report the minutes of the assembly, probably would not be expected to write either official letters or private letters for the individual members. The ten general stenographers appointed under the law are for the express purpose of providing stenographers for the individual members, who shall act pro tanto as their private stenographers while they are in attendance upon the legislative session. Members of the Legislature are usually in Albany from Monday night until Thursday. While there many matters require their attention and correspondence, both public and private. If they were required to write out all letters that did not relate to their duties as legislators, much of their time would be consumed which should properly be devoted to those duties. It seems clear to me that the duty of these general stenographers, under their contract with the state, is not merely to write official letters, but to write any letter, official or private, that a member of the assembly may have occasion to write while away from his home and in attendance at the legislative session. If such be the plaintiff's duty, then her agreement to act as stenographer for the defendant for the sum of $100 was without consideration. Callagan v. Hallett, 1 Caines, 104; Hatch v. Mann, 15 Wend. 44.

It is further contended that this work was done nights and upon

plaintiff's own machine, and sometimes at the defendant's apartments. The contract did not call for work overtime or at plaintiff's home or upon her machine. If during regular hours she was busy with other members, so that she chose to do this work out of business hours, it would seem as though the other members whose work she was doing should also contribute to compensate plaintiff. The fact remains that the work done was wholly included within her duties as general stenographer of the assembly, and the fact that in doing part of the work she worked overtime and at her room does not entitle her to charge extra compensation. See Hatch v. Mann, supra; McCarthy v. Bonynge, 12 Daly, 336, affirmed on opinion below 101 N. Y. 668; Carpenter v. Taylor, 164 N. Y. 171, 58 N. E. 53; Bloodgood v. Wuest, 69 App. Div. 356, 74 N. Y. Supp. 913.

It follows that the judgment of the County Court and of the City Court should be reversed, and a new trial granted in City Court, with costs to abide the event.

Judgment of the City Court and County Court reversed, and new trial granted in City Court, with cost to appellant to abide event. All concur, except LYON and HOWARD, JJ., dissenting.

HOWARD, J. (dissenting). In 1911 the defendant in this action was a member of assembly. He came to Albany from New York. He was a lawyer. He advertised in an Albany newspaper for a stenographer. The plaintiff answered the advertisement. She went to the defendant's hotel and had a conversation with him. She says that she made a contract with the defendant whereby he engaged her as his private stenographer and agreed to pay her $100 for her services for the legislative season. The defendant admits the conversation, but denies that any contract was made. The plaintiff alleges that in the conversation, before the bargain was struck, she told the defendant that she had been appointed as one of the general stenographers for the assembly. The plaintiff immediately entered upon the performance of her duties. She took much dictation and wrote many letters. On the trial it was conceded by the defendant's attorney that a majority of the letters were of a "private nature." The plaintiff testified that about two-thirds of the work was of that character. She performed much of her work at times when the Legislature was not in session— Saturdays, Sundays, and evenings.. She took a considerable amount of the dictation at the defendant's apartments. Much of the typewriting she did at her own home; she did this work on her own machine. She did other work for the defendant, during recess, when the Legislature was not in session. The defendant telephoned the plaintiff frequently calling her from her house to the Capitol.

The testimony of the plaintiff was well corroborated by circumstances and by other witnesses, so that the trial court was entirely warranted in finding that the contract had been made and in resolving all the facts in her favor. But the contention is being urged here that the services which the plaintiff rendered to the defendant were services required of her in the performance of her duties as general stenographer of the assembly, and that she was being paid for those services by the state, and that she is prohibited by section 67 of the Public Officers'

Law, section 10 of the Legislative Law, and section 855 of the Penal Law (Consol Laws, c. 40), from receiving any other compensation for those services.

If the services performed by the plaintiff for the defendant were such as were required of her in the performance of her duties as general stenographer of the assembly, the contract in question was void for want of consideration and also because it was in direct conflict with three separate statutes. But if the services were not within the range of the plaintiff's official duties, there can be no doubt that the defendant is liable on his contract. It seems to me that these services were clearly outside the scope of her duties as an employé of the state. A large majority of the letters which she wrote were "personal" letters, they were of a "private" character, they were concerning "social" and "fraternal" matters. It cannot be supposed that the state of New York has ever intended to employ stenographers to attend to this sort of correspondence for the members of assembly who come to Albany to enact laws. It may be difficult to separate the private and personal correspondence of the members of assembly, on every occasion, from that which pertains to their official duties. In the exercise of common sense and out of a disposition to be fair and accommodating and not picayune, the stenographers of the assembly undoubtedly do much of this private and personal work. However, when the affairs of a member of assembly are so extensive that it becomes necessary for him to employ a stenographer, at a fixed salary, to work nights and Saturdays and Sundays, attending to his private matters, doing it at her home instead of at the Capitol, such services are not within either the letter or the spirit of the statute under which general stenographers for the assembly are employed. The defendant knew the law; he was a maker of laws; also, he was a lawyer. With all these advantages over the common citizen, with all this knowledge at his command, he deliberately entered into this contract with the plaintiff. He knew that the plaintiff was one of the general stenographers for the assembly; she told him so before he hired her. He must have known that an agreement to pay her for services for which she was already under pay from the state would be a contract without consideration; a contract repugnant to section 67 of the Public Officers' Law and repugnant to the other statutes on the subject. Therefore it must be assumed that he contracted with the plaintiff to perform services outside the scope of her duties as general stenographer of the assembly. This assumption is strengthened by the character of the work which she, in fact, did perform.

. This contract was fairly and openly and honestly made by the parties hereto, and there is no reason in equity, or under the statutes, or in deference to public policy, why it should not be enforced. There can be no sort of doubt that the defendant made the contract in question and that he has availed himself of this girl's services. His attitude here is wholly unconscionable and is not sustained by any statute of the state or sanctioned by any principle of law.

The judgment should be affirmed, with costs.

LYON, J., concurs.