## HATCH *vs.* MANN.

A *constable* or other ministerial officer, the *fees* for whose official services are prescribed by law, cannot maintain an action on a promise of *extra compensation* for *extra services*, although services beyond what could legally be required are rendered by the officer.

ERROR from the supreme court. Hatch applied to Mann, a constable, to *arrest* his debtor of the name of *Gallup*. Mann declined, but on a promise of being well paid, undertook the service, and went with a person employed by him to assist to the house of *Gallup*, at the hour of *three, A. M.*, and watched until day break, when he succeeded in arresting him. Hatch refusing to pay, Mann sued him in a justice's court, and a jury rendered a verdict in his favor for the sum of *one dollar and seventy-five cents*, on which the justice rendered judgment. The defendant removed the cause by *certiorari* into the Yates

common pleas, where the judgment of the justice was *affirmed*. He then sued out a writ of error removing the record into the supreme court, where the judgment of the common pleas was *affirmed*; and, as a last resort, removed the record into this court. See case and opinion of supreme court, 9 *Wendell*, 262.

The cause here was argued by

*S. Stevens*, for the plaintiff in error.

*J. A. Spencer*, for the defendent in error.

The following opinions were delivered :—

By the CHANCELLOR. The amount originally in controversy in this cause, before the justice, for which the defendant in error obtained a verdict, was very trifling; and if an important principle were not involved in the decision of the court below, this case would hardly deserve the serious consideration of the members of this court. The case, however, in the court below, appears to have turned upon the question whether a ministerial officer, whose fees or compensation for particular services are fixed by law, can recover an extra compensation for the performance of such services, beyond the allowance prescribed by the legislature in the fee bill, where more than ordinary diligence is used in the performance of those services; in other words, whether the promise of a party to pay the sheriff or a constable an extra fee for the service of process, is legal and binding, so as to enable the officer to recover such extra compensation in an action of assumpsit. There was, indeed, no evidence in the court below that the plaintiff had a warrant against Gallup, or that he made the arrest in the character of a public officer; the justice having precluded the introduction of any such evidence on the part of the defendant on the trial before him. Strictly, therefore, the plaintiff had no legal claim whatever against the defendant for the arrest of Gallup; for if he was not acting in the character of a public officer, and under a legal warrant, the arrest was not only an illegal but a criminal act, for which he was liable to an indictment, as well as to a civil action for the assault and imprisonment; and no action could be sustained by the plain-

tiff upon a promise to pay him for doing such improper and illegal act. It is like a promise to indemnify the editor of a paper for the publication of a libel, or an agreement to indemnify a sheriff for a known violation of his duty ; both of which are absolutely void, as against public policy and as founded on illegal considerations. The object of all law is the promotion of the public welfare and the suppression of vice and immorality. Hence the law will not assist any one in recovering a demand which originates in a breach or violation, on his part, of its principles and enactments ; or where the party seeking to recover requires any aid from an illegal transaction to establish his case. *Simpson* v. *Bloss,* 7 *Taunt.* 246. This principle alone, in the absence of any proof that the act for which the plaintiff claimed compensation was authorized and legal, would probably be sufficient to show that the recovery of the plaintiff was contrary to law. I am disposed, however, to examine this case as if the plaintiff in the court below had established the fact that he was a constable, and was authorized by a legal warrant to arrest Gallup at the suit of Hatch ; that the latter promised the constable to pay him an extra compensation, beyond the allowance fixed by the statute, if he would effect such arrest ; and that the legal fee of the constable was not sufficient fully to compensate him for the service of the warrant in the particular case, under the circumstances in which that service was made.

The legislature has thought proper to prescribe specific allowances for the service of a warrant, and for notifying the plaintiff, and for mileage, without giving any further compensation for the extra trouble to which the officer might be subjected in the performance of these services in particular cases. The legislature has also explicitly declared, that no judge, justice, sheriff, or other officer whatever, or other person to whom any fees or compensation shall be allowed by law for any service, shall take or receive any other or greater fee or reward for such service, but such as is or shall be allowed by the laws of this state. 2 *R. S.* 650, §5. And any person violating this statutory provision, is declared to be guilty of a misdemeanor, and is also liable to the party aggrieved for treble damages. The framers of these statutory provisions are

not chargeable with the absurdity of supposing that the compensation prescribed in the fee bill would be a full and adequate one for the performance of the service in each particular case ; but to prevent extortion and oppression on the part of public officers, and the interminable litigation which must necessarily arise if the amount of their compensation or the value of their services was dependent upon the circumstances of each case, a fixed allowance has been prescribed by law ; which, taking one case with another, was deemed a fair compensation. If this allowance is more than the service is worth in one class of cases, the officer has the benefit of it, as the party for whom the service is performed must pay it ; and it is therefore but reasonable that the officer should sustain the loss in other cases, if it should turn out that this fixed compensation is an inadequate allowance for the service performed. These principles are as old as the law itself. Formerly the sheriff received a fixed salary from the crown, and was not permitted to receive any other compensation for his services, either for extra trouble or otherwise, *Sherley* v. *Packer*, 1 *Roll. R.* 313 ; and after it was found expedient to allow them to take fees for particular services, the common law still adjudged them to be guilty of extortion if they took any thing more. It became also the settled law at that early day, that a promise to pay money to a public officer for doing that which the law would not suffer him to take any thing for, or to pay more than was allowed by law, was merely void, however freely and voluntarily it might appear to have been made. *Batho* v. *Salter*, *Latch R.* 54 ; *W. Jones' R.* 65, *S. C.* For, as Sergeant Hawkins says, if once it should be allowed that such promises could sustain an action, the people would be quickly given to understand how kindly they would be taken ; and happy would that man be who could have his business well done without them. 1 *Hawk. P. C. ch.* 68, §4. The principles of these early cases will also be found to be adhered to in the recent English decisions. *Lane* v. *Sewall*, 1 *Chitty*, 175. *Dew* v. *Parson,Idem,*295. *Morris* v. *Burdett*, 1 *Camp.* 218. *Bilke* v. *Havelock*, 3 *id.* 374. And the same principles will also be found embodied in the reported decisions of several of our sister states. *Preston* v. *Bacon*, 4 *Conn. R*, 471. *Shattuck* v.

ALBANY,
Dec. 1835.

Hatch
v.
Mann.

*Woods*, 1 *Pick.* 175. *Bussier* v. *Pray*, 7 *Serg. & Rawle*, 447. *Carrol* v. *Tyler*, 2 *Har. & Gill*, 54. *Smith* v. *Smith*, 1 *Bailey*, 70. The cases in which extra allowances have been made to public officers, are cases where services were performed by them for which no compensation was prescribed in the fee bill, or where the services were not rendered by them as officers, but in their private characters. Here the only service preformed by the constable was that of arresting a party on a warrant; and although he went in the night time, it was still a part of the same services for which a specific allowance is made by law. The fact, therefore, that it was done at an unusual hour, cannot authorize the constable to receive an extra compensation. It is even doubtful whether it is consistent with public policy to permit a public officer to receive and retain an extra compensation for his services, even as a voluntary donation, if such extra allowance is founded upon a promise made to the officer previous to the performance of the duty; but certainly this court cannot sanction a recovery founded upon such a promise, without a virtual repeal of the statute. Neither public sentiment or the law of the land would justify a senator in receiving compensation for extra trouble and at unseasonable hours, as a member of a legislative committee; although the law might authorize him to charge the person at whose request it was performed, for preparing or copying a petition, to be afterwards presented by him to the senate. In this case, I think the justices of the supreme court, probably from the pressure of official duties and from the trifling amount in controversy between the parties, have overlooked the obvious distinction between the performance of extra services by a public officer, and the performance of the services specified in the fee bill in a more vigilant and faithful manner than usual; and their judgment is for that reason erroneous and should be reversed, together with the judgments of the justice and of the court of common pleas.

By senator TRACY. I will not doubt for a moment that the judgment of the supreme court should be reversed. In the language of honest *Justice Wilmot*, 2 *Burr.* 924, I say, " this is a most shameful and scandalous action," and it would not

I am confident, have obtained the countenance of any court, had its principle, been duly considered. That a public officer, whose fees are prescribed by law, may maintain an action to recover an additional sum promised him by a party for doing his official duty, is a monstrous proposition, fraught with every kind of mischief. The pretence that it is for extra services would cover any conceivable corruption or extortion. What are extra services in the performance of a defined official duty ? The supreme court seem to define them as being " extraordinary efforts, beyond what an officer is strictly bound to make," But, " *Nil agit exemplum, litem quod lite resolvit.*"—What are the " extraordinary efforts" which an officer can make to discharge his official duty, which he is not strictly bound to make ? When he takes upon himself the office, he solemnly swears to discharge the duties of it " according to *the best of his ability,*" Has he then an extraordinary ability beyond his best ability, for the exertion of which he may legally demand extra pay ? If it be so in regard to a constable, it is equally so in regard to every other officer, judicial or ministerial. They all take the same oath, and all are embraced together in the same prohibition. The language of the 2 *R. S.* 650, § 5, is, " No judge, justice, sheriff, or other officer whatsoever, or other person to whom any fees or compensation shall be allowed by law for any service, shall take or receive any other or greater fee, or reward for such service, but such as is or shall be allowed by the laws of this state."

If a constable, for making " extraordinary efforts" to perform an ordinary official act, may not only receive, but may also collect by law a compensation beyond what the statute allows for the act, any other officer may do the same ; and sheriffs, legislators and judges might and soon would put their " extraordinary efforts" in the market, to be had by the highest bidder. This is a sickening and revolting view of the subject, I admit, but it is one forced on my mind by the case. It carries back my thoughts to scenes which I trust are never to be witnessed in this country, when chancellors and judges made a business transaction of receiving gratuities from par-

ALBANY,
Dec. 1835.

Hatch
v.
Mann.

ties for expediting, i. e. making " extraordinary efforts" to dispose of their suits.   These gratuities were not deemed bribes for perverting justice, but merely compensations for " extraordinary efforts" to administer it " beyond what an officer was strictly bound to make." The great Lord Bacon, by the workings of whose mighty mind

" Darkness fled,
" Light shone, and order from disorder sprung."

secured his eternal epitaph, of " wisest, brightest, *meanest* of mankind ;" not by contaminating his fingers with bribes to do injustice, for it is recorded of his judicial decisions that never one of them was reversed, or even the fairness of it questioned—but by receiving gratuities for making " extraordinary efforts" to discharge his official duty.   It was because he had an itching palm and sold his offices for gold, that he was impeached, fined, imprisoned, degraded and disgraced, and that genius which like a meridian sun should have illumined a world, for this reasonable practice of taking extra pay for " extraordinary efforts," was shorn of its beams, and will forever " in dim eclipse, disastrous twilight shed."

I have scarcely patience to look for authorities to support a principle which of itself is paramount to all authority.   I would not do it, were it not a sort of official obligation to show, whenever it can be done, that every decision made by me as a member of this high court is in harmony with the judicial decisions of that country from which we have borrowed most of our notions of civil jurisprudence and public duty.   As it is, without looking far for cases, I find two which I think to the point.   The first is *Bridge* v. *Cage, Cro. Jac.* 103, and was an action of assumpsit by an under sheriff to recover money promised to him in consideration that he would execute a writ of elegit, for which service no fees are provided by law.   The court held the promise void, and that an action cannot be maintained by an officer to recover a compensation not given by law, though the promise was freely and voluntarily made, and even joined with another promise made on a lawful consideration.   The next case is *Stotesbury* v. *Smith,* 2 *Burr.* 924, where a promise to pay a bailiff a sum of money in consideration of accepting certain persons as bail, was held void,

even after verdict for the plaintiff. Sir William Blackstone, who also reports this case, 1 *Black R.* 204, says, "The king's bench were all of opinion that this was an illegal consideration, and reversed the judgment with much indignation." The same result, but unmingled with the slightest feeling of disrespect for the worthy court that pronounced it, will, I trust, take place in regard to this judgment.

On the question being put, *Shall this judgment be reversed?* the members of the court voted as follows:

*In the affirmative.*—The PRESIDENT of the Senate, the CHANCELLOR, and *Senators* ARMSTRONG, BISHOP, CROPSEY, EDMONDS, EDWARDS, GANSEVOORT, HALSEY, JONES, LACEY, LANSING, LOOMIS, MAC DONALD, MAISON, TRACY, VAN SCHAICK, WILLES—18.

*In the negative*—*Senators* BEARDSLEY, BECKWITH, DOWNING, FISK, M'DOWELL—5.

Whereupon the judgment of the supreme court was RE-VERSED.