# SUPREME COURT.

WILLIAM C. FARGO, president. &c., agt. WILLIAM A. G.
ARTHUR, *et al.*

A *reward* was offered and published by the plaintiffs, as follows: "$5,000 reward
will be paid for the arrest and conviction. or information leading thereto, of the
person or persons who attempted to murder, and did rob, the messenger of the
Am. Merchant's Union Express Company, while crossing the railroad bridge at
Albany, on Friday evening, Jany. 6, 1871. For the company, J. C. FARGO,
Gen. Superintendent."
After trial, conviction and sentence of the prisoner, several persons claimed the
award, in whole or in part.
In an action of *interpleader* by the plaintiffs, *held*, that it is a case peculiarly proper
for such an action. The plaintiffs are ready to pay to the persons lawfully en-
titled. Some of the defendants claim the whole ; some claim an equitable distri-
bution. It is evidently a case in which tho matter should be adjusted in one
suit, and in which the plaintiffs do not know to whom they ought to pay the
money.
*Held*, also, that although the reward, strictly construed, might be considered in the
alternative, as an offer of that amount for two distinct acts each—for the arrest
and conviction, *or* information leading thereto, yet a paper like this ought to be
construed as the public, to whom it was addressed, would understand it, for
$5,000, only.
Practically, in this case, it appears that it was the information furnished by many
parties, which led to the result—not a repetition of the same information, but
information of independent facts. And upon the principle that "where there is
no one individual who gives information that is of itself useful, but that several
persons give different pieces of information, the whole combined leads to the
apprehension and conviction of the offender," it is a proper case for an equitable
distribution of the award among the claimants entitled thereto.

*Albany Circuit, Special Term, February,* 1872.
ACTION of interpleader.

WILLIAM J. HADLEY, *for the plaintiffs.*
Messrs. HALE, BECKWITH, MATTICE, TREMAIN, GREENE,
CLUTE, MOAK, PECKHAM and BANCROFT, *for the
several defendants.*

VOL. XLIII. 13

LEARNED, J.—This is an action of interpleader, brought to determine who, among numerous claimants, are entitled to the reward of $5,000 offered by the American M. U. Express Company, after the robbery of Thomas A. Halpine, one of their messengers. The plaintiffs are the company, and they have brought into court the amount aforesaid. The defendants are the persons who severally claim to be entitled to the amount, or to a part of it. At about 8 P. M. on the 6th of January, 1871, Halpine was robbed and nearly murdered while on an express car on the Boston and Albany Railroad. The deed was done while the train was crossing the railroad bridge at Albany. On the 7th, the company published an offer in these words: " $5,000 reward will be paid for the arrest and conviction, or information leading thereto, of the person or persons who attempted to murder, and did rob, the messenger of the Am. Merchant's Union Express Company, while crossing the railroad bridge at Albany, on Friday evening, Jany. 6th, 1871. For the company, J. C. FARGO, Gen. Superintendent."

No person was then suspected by the company, or the public authorities.

On the morning of January 8th, Thomas Braidwood informed Mr. Dwight, the superintendent of the company, that on the afternoon of Jany. 6th, he had seen John I. Filkins in a pawnbroker's shop looking for a pistol, but that he did not buy one. In consequence of that information, Dwight saw Filkins that afternoon and became satisfied that he had some guilty knowledge of the crime.

On the morning of Jany. 7th, Robert A. Scott sent word to the police headquarters that he had sold a pistol on the day before and gave a description of the purchaser, and on the evening of the 8th, he had another interview with the police.

On the afternoon of Jany. 8th, William A. Whalen found, near the spot where the crime had been committed, the pistol with which it was done; and this pistol he gave, on the same day, through his mother, to one of the employees

of the railroad, from whom the information of the discovery came to the public authorities.

On the evening of January 8th, Jeremiah Flood informed the superintendent of the railroad that he saw a person, known to him by sight but not by name, jump on the express car and ride to the depot on the evening of the robbery; and he gave the same information to Mr. Kyle, the special policeman of the railroad, on Monday. This person was proved to be Filkins.

During all this time Filkins was at his house, not arrested and not suspected by the public. On the 11th of January, in the early morning, he fled and was at once suspected by the public of this crime.

On the evening of January 12th, William H. Foos, of Ballston, left a telegraphic dispatch at the office in Ballston, to the police at Albany, that Filkins had breakfasted at his house and was on his way to Canada, or (according to other witnesses) to Galway. The dispatch was forwarded on the morning of the 13th.

George F. White, of Saratoga, late on the morning of the 13th, telegraphed to the police that a suspicious-looking man (who proved to be Filkins) stayed at his house and went away in the morning, saying that he was going to Canada. Mr. White's dispatch did not reach Albany until after the dispatch from Foos had been received.

On the 15th of January, Altentor Hall, of Whitehall, received a telegraphic dispatch from the Express Company, saying that Filkins was going towards Canada, and requesting that pursuit should be made. On the same day, Hall showed the dispatch to Herman Ingraham and Oliver Thomas of the same place. Ingraham ordered a team, and he and Thomas went in pursuit of Filkins. By Ingraham's advice, they went by Fort Ticonderoga. They were lost on the lake, and reached Fort Ticonderoga the next morning, the 16th. There Ingraham showed William A. G. Arthur the dispatch and proposed that he should go. Ingraham was ill and

could not go on. Arthur and Thomas started that day from Fort Ticonderoga, in search of Filkins. They reached John D. Burwell's hotel, at Salmon Lake, and went on to Pottersville, where they put up for the night. At about eight o'clock on that evening, Filkins arrived at Burwell's house, on a stage driven by Charles F. Leland, and registered himself by a fictitious name. Immediately on his arrival, Burwell suspected him to be Filkins. After he had gone to bed, Burwell sent Leland and Joel Potter to Pottersville, for Arthur and Thomas, and they came back together about 11 P.M. That night these five men arrested Filkins. They brought him to Albany. He was subsequently tried, convicted of this crime, and sentenced to the state prison for twenty years.

All of the persons whose names have been mentioned as giving information, or as participating in the arrest, claim the reward or some part of it. Their views are very conflicting. Some claim that the person who first furnished any information which ultimately led to the conviction, is entitled to the whole amount. Some claim that the persons who made the arrest are entitled to the whole, exclusive of all others. Some claim that there should be an equitable distribution of the award among all, including those who furnished information and those who made the arrest. And still another claim is, that those who made the arrest are entitled to $5,000 and those who furnished information to another $5,000. Burwell, Thomas, Leland, Arthur and Potter, however agree to share among themselves whatever they or any of them shall be entitled to.

1. A case like this is peculiarly proper for an interpleader. The plaintiffs are ready to pay to the persons lawfully entitled. Some of the defendants claim the whole; some claim an equitable distribution. It is evidently a case in which the matter should be adjusted in one suit, and to which the plaintiffs do not know to whom they ought to pay the money (2 *Story Eq.*, §§ 806 *and* 29; *City Bk.* agt. *Bangs*, 2 *Paige*, 570).

2. I am satisfied that this is an offer of only $5,000 reward. Perhaps by a strict logical construction, it might be urged that an offer in the alternative for two things is an offer for each. But a paper like this ought to be construed as the public, to whom it was addressed, would understand it, and I think, no one would suppose it to be an offer of $10,000. Besides, it is an offer for the arrest and conviction, or information leading thereto. Now, it is admitted that "conviction" is a pre-requisite condition before any one can claim the reward. Conviction must be preceded by arrest; and the information for which a reward is offered is such, as leads to arrest and conviction.

3. The case of *Fitch* agt. *Snedaker*, (38 *N. Y.*, 248), holds that under such an offer, a person is not entitled to recover for anything done before the offer was made. In the present case, all the defendants base their claims on acts done after the offer. Their motives are immaterial (*Williams* agt. *Carwardine*, 4 *Barn. & Ald.*, 274).

4. Is there any reason to construe this offer as entitling either of the two classes, viz., he or they who informed and those who arrested, to the whole reward, exclusive of the other class? I think not; for these reasons, as above noticed, an informant or informants, could not be entitled to recover until conviction; and arrest must precede conviction. The offer for information then, would be a nullity, if any parties who should arrest would take the whole reward unless, perhaps, in the case that the arrest should be made by the Express Company, or in the case that it should be made by a public officer (*Hatch* agt. *Mann*, 15 *Wend.*, 45). I cannot, therefore, suppose that the offer was for the benefit of those who made the arrest, exclusive of those who gave information. So too, he or they who gave information ought not to exclude those who made the arrest, as the offer is for both. Unless, however, the next point to be considered shall establish a different rule.

5. It is claimed, that the person who first gave any infor-

mation, however unimportant of itself, which with other information led to the arrest is entitled to the whole reward. To sustain this position, the case of *Thacher* agt. *England*, (54 *Com. Law*, 254), is cited. A reward was offered " on recovery of the property, and conviction of the offender." A. gave information that B. had admitted to him that he was the guilty party. Few days afterwards the plaintiff, a police constable, arrested B. and by his activity recovered the property and caused B.'s conviction. It was held that the plaintiff could not recover the reward. But the opinions of the judges do not lay down any clear principle. TINDALL, *C. J.*; says, that he thinks, the money should be paid to the person who first communicated the information which ultimately led to conviction ; and that plaintiff did no more than his ordinary duty. COLTMAN, *J.*, says, possibly an action by plaintiff and A. might be sustained. MANLE, *J.*, says, that the reward should be divided among such persons as gave information and assistance in proportion to the value of their services. CRESSWELL, *J.*, says, that plaintiff was only acting as a peace officer, and therefore, it was A. who caused the arrest. Thus, the only point decided is, that the plaintiff could not recover, and two of the judges seem to place this on the fact of his being an officer. Nor was there any question that A.'s information, and that alone fixed suspicion on B.

In the case of *Lancaster* agt. *Walsh*, (4 *Mess. and Welsby*, 16), a reward was offered for information whereby bank notes, which had been taken by robbery, might be traced. Lord ABINGER, says, that such information means the first that is sufficient for the purpose. After such has been given it cannot be said that the party is informed by another telling him the same thing.

Those two cases differ from the present in this respect. The " first information" to which reference is had in the opinions, was such, as if true, fixed the crime on the party finally convicted. In the present case, all the information

furnished·was of suspicious facts.   Some of them pointing to
Filkins.   Some not pointing to any one, and altogether not
inducing the public·officers, in fact, to make an arrest up to
Filkins' flight.   And the case of *Farmer* agt. *Walker*, (*Law*
*Rep.*, 1 *Queen's Bench*, 641), recognises the difficulty which
must exist where the information furnished·is but remotely
connected with the result.

6.  Practically it seems to be true, that it was the informa-
tion furnished by many parties which led to the result in
this case.   Not a repetition of the same information, but in-
formation of independent facts.  ·Justice MANLE in *Thacher*
agt. *England*, states the condition of the present case.   " It
often happens that there is no one individual who gives in-
formation that is of itself useful;  but that several persons
give different pieces of information, the whole of which
combined, leads to the apprehension and conviction of the
offender."

This view was taken in *City Bank* agt. *Bangs*, (2 *Paige*,
570), and although upon·the hearing before the V. C. (in 2
*Ed. Ch.*, 95), he held, that Bangs was entitled to the whole,
yet it was on the ground that he only was the active party
in causing the arrest.  The V. C. in excluding Van Riper
from a share, does so on the ground that his remarks were
casual, and not intended to give information.

In the case of *Jones* agt. *Phœnix Bank*, (8 *N. Y.*, 228),
a reward of $5,000 was offered.  There were several claim-
ants, and the matter was submitted to Chancellor KENT.  He
awarded $1,000 to Jones, and the rest to others.  The cor-
rectness of this adjudication is not involved in the decision
above referred to.  But it has the sanction of that learned
jurist's name.  A remark of the court, however, on page
233 suggests the possibility of an action by several plaintiffs,
each having performed some part of the conditions, and all
together having performed all the conditions of the offer.

It is said, that any division of the reward must be arbitrary.
This is true, just to the extent that the reward itself is one

arbitrary sum. The company might have offered a less or a greater sum. There was no market value for the arrest of the criminal, or for the information which would lead thereto. But the company chose to offer this arbitrary sum, to encourage and reward those who brought about the conviction of the criminal. While these judgments might differ as to the degree to which these several defendants contributed to the result ; still the division of the reward among them then would not be arbitrary, but would be based on the relative value of their acts. In applying this rule, I have carefully considered what all these parties have severally done, and the relative value of their acts towards the end accomplished. And I have come to the conclusions following :

7. I do not think that Hall furnished any information, or arrested Filkins.

However, praiseworthy Ingraham's acts may have been, he did not effect the arrest. Whatever the agreement was between him and Arthur, that does not come into this case. He did not furnish any information to the company.

White's telegraphic dispatch was substantially the same information which Foos had previously given ; and therefore, he cannot be entitled to share.

There was but one arrest, and the five persons who made it, are to share jointly. Of course, the number of persons engaged in the arrest, does not increase the aggregate which they should receive.

The plaintiff's costs with an extra allowance of 5 per cent, will be paid first out of the funds. The remainder is to be distributed among the defendants, exclusive of Hall, Ingraham and White, as follows :

To Burwell, Arthur, Leland, Thomas and Potter jointly, fifteen-fortieths.

To Flood, three-fortieths.

To Foos, Scott and Whalen, each five-fortieths.

To Braidwood, seven-fortieths.

Judgment accordingly.