JOHN H. ATWOOD, Respondent, *v.* EDWARD J. ARMSTRONG and ROBERT T. DUNLOP, Substituted in the Place of the FIRST NATIONAL BANK OF THE CITY OF NEW YORK, Appellants.

*Reward offered for the arrest or information leading to the arrest of a criminal — what entitles a party thereto.*

In an action brought by John H. Atwood against Edward J. Armstrong and Robert T. Dunlop to determine their respective rights to a reward of $5,000 offered by the First National Bank of the city of New York for the arrest or information leading to the arrest of one Alvord, its defaulting paying teller, it appeared that the published notice of the reward attracted the attention of one Tooke (Dunlop's assignor); that on Thursday, October 25, 1900, Tooke saw Alvord at a Boston hotel and notified the officers of the bank thereof by telephone; that, in the meantime, he endeavored to keep sight of Alvord, but that on the same night Alvord left the hotel in a carriage and was driven rapidly away; that Tooke followed him as far as possible on foot, but finally lost sight of him; that the information which Tooke gave to the bank was communicated to the police department who sent a police officer named Tinker to locate and arrest Alvord; that Tinker communicated with Tooke and that they both unsuccessfully endeavored to locate Alvord; that on Saturday, October 27, 1900, Tinker gave up the search and was ordered to return to New York.

It further appeared that on Saturday, October 27, 1900, the plaintiff Atwood, who was the proprietor of a Boston hotel, saw the published notice of the reward and discovered a resemblance between Alvord and a man who had been staying in his hotel; that Atwood communicated with one Barrett, a friend, and that on the same day they telephoned the New York police department and communicated their information to the sergeant in charge of the detective bureau; that the head of the detective bureau instructed Detective Sergeant Armstrong, one of the defendants, and another detective officer to proceed to Boston and endeavor to arrest Alvord; that Armstrong and his companion went to Boston, saw the plaintiff and Barrett on Monday morning, went to the plaintiff's hotel where Armstrong found and arrested Alvord, who was subsequently taken to New York, pleaded guilty and was convicted.

*Held,* that the plaintiff was entitled to the whole amount of the reward;

That the defendant Dunlop, as assignee of Tooke, was not entitled to any portion of the reward for the reason that the information given by Tooke did not lead to Alvord's arrest;

That Armstrong was not entitled to any portion of the reward for the reason that he acted solely in the discharge of his duty as a police officer of the city of New York, and did nothing in the premises but what he was bound to do in the discharge of his duty as such police officer.

APPEAL by the defendants, Edward J. Armstrong and Robert T. Dunlop, from a judgment of the Supreme Court in favor of the

FIRST DEPARTMENT, MARCH, 1905.　　　　[Vol. 102.

plaintiff, entered in the office of the clerk of the county of New York on the 13th day of January, 1904, upon the decision of the court rendered after a trial at the New York Special Term.

*Frederick F. Neuman,* for the appellant Armstrong.

*Robert Leslie Moffett,* for the appellant Dunlop.

*Abel E. Blackmar,* for the respondent.

INGRAHAM, J.:

This action was originally brought against the First National Bank of the city of New York to recover the amount of a reward offered by that bank for the arrest of a teller of the bank who was a defaulter in a large sum of money. Other claims for this reward having been made, the bank paid the amount offered into court, and the other claimants of the reward were substituted as defendants. The complaint alleges that on or about the 26th day of October, 1900, the First National Bank of the city of New York caused to be published an offer to give to any person a reward of $5,000 for the arrest or information leading to the arrest and conviction of one Cornelius L. Alvord, Jr., who had theretofore been paying teller in the employ of said bank. It was upon this offer that the plaintiff sought to recover in this action. After service of the complaint an order was made, on motion of the First National Bank and upon the consent of all the parties interested, that upon payment of the sum of $5,000 by the First National Bank to the chamberlain of the city of New York to the credit of this action, Edward J. Armstrong and Robert T. Dunlop be substituted as defendants in place and stead of the First National Bank, and that said bank be discharged from all liability either to the plaintiff or to said Armstrong or Dunlop by reason of any reward offered by the said bank for the arrest of Cornelius L. Alvord, or any of the matters alleged in the complaint of the plaintiff or of Edward J. Armstrong in the respective actions brought by them against the said bank relating to said reward, with a further provision that the plaintiff might serve an amended summons and complaint, bringing in Armstrong and Dunlop as parties defendant. This order having been made by the consent of all the parties interested, the only question before the court was as to the person who was entitled to

the reward offered by the bank for the arrest or information leading to the arrest and conviction of Alvord.

The amended complaint having been served, the defendant Dunlop answered, admitting the allegations of the complaint as relating to the reward offered by the bank. The answer of the defendant Armstrong does not deny this allegation of the complaint as to the reward, but alleges that the First National Bank of the city of New York offered generally to the public a reward of $5,000 for the arrest and delivery of Alvord to the United States marshal for the southern district of New York, and that he arrested Alvord and delivered him to the said marshal. The offer of the bank set up in the answer of Armstrong differs in some respects from that set up in the complaint, the allegations of which are not denied by either of the defendants; but as the payment of the money into court was made to discharge the First National Bank from the cause of action alleged in the complaint, the only question to be determined was, who was entitled to the reward which was alleged in the complaint to have been offered by the bank. It was no defense to this action to show that the bank had offered another or different reward to which Armstrong made claim. By paying the money into court the bank conceded that it had offered the reward as alleged in the complaint; and we have to determine to whom the reward as thus offered was to be paid.

The case upon the amended pleadings having come on for trial at Special Term, the court awarded the amount to the plaintiff, and from the judgment entered upon that decision the defendants separately appeal. There was no substantial dispute as to the facts. Alvord had been paying teller for the First National Bank for many years, and while employed in that capacity had embezzled about $700,000. His crime was discovered in October, 1900, when he disappeared, whereupon the chief of the detective bureau caused to be published a circular that a reward of $5,000 had been offered "for the arrest or information leading to the arrest and conviction of Cornelius L. Alvord, Jr." The circular then described Alvord, his position in the bank and the crime he had committed, with a request to "wire all information to George W. M'Clusky, Captain Detective Bureau, No. 300 Mulberry Street, New York City." This notice was published in the daily papers in New York and

Boston, and pictures of Alvord seem also to have been published in the papers. This notice attracted the attention of one Tooke, who was then in Boston, Mass., and on Thursday, October 25, 1900, he saw Alvord in a hotel in Boston, having had previous transactions with the bank and having seen Alvord there. He called up on the long-distance telephone the officers of the bank and informed them that he had seen Alvord in this hotel in Boston, and in the meantime he endeavored to keep sight of Alvord; but on Thursday night Alvord left the hotel in a carriage and was driven rapidly away, Tooke following him as far as possible on foot, finally losing sight of him. The information that Tooke gave the officers of the bank was communicated to the police department, who sent Officer Tinker to locate and arrest Alvord if possible. Tinker communicated with Tooke, and together they endeavored to locate Alvord, but without success, and on Saturday it would appear that Tinker had given up the search and had been ordered to return to New York. On Saturday the plaintiff, who was the keeper of a small hotel or boarding house in Boston, had his attention called to this advertisement and Alvord's picture in a New York or Boston newspaper. There had been staying in his house for a day or two prior to this time a man who had attracted attention by remaining in his room and having his meals served there, and the plaintiff thought that this man resembled the picture of Alvord. He communicated with Barrett, a friend in Boston, and on Saturday morning, October twenty-seventh, they called up the police department in New York on the long-distance telephone and communicated to Sergeant Hughes, who was then on duty in the detective bureau in New York, the fact that Alvord had been seen. Captain M'Clusky, the head of the detective bureau, was informed by Hughes of this communication, and he at once instructed Detective Sergeant Armstrong, one of the defendants, and Sergeant Carey, another detective officer, to proceed at once to Boston and endeavor to arrest Alvord. They went to Boston on Sunday, saw the plaintiff and Barrett on Monday morning and, obtaining the assistance of the chief of the Boston police, went to the plaintiff's house and there arrested Alvord, who subsequently returned to New York and was delivered to the United States authorities, was indicted, pleaded guilty to the crime and was sent to prison.

The defendant Armstrong introduced evidence to show that the bank directed its attorney to draw up an offer of reward, which he did and which was distributed by Pinkerton's Detective Agency. This offer was a reward of $5,000 "for the arrest and delivery of Cornelius L. Alvord, Jr., to the United States Marshal (or his deputy) of the Southern District of New York;" but there was also evidence to show that the detective bureau had received a check for $5,000 from the bank, to be held by it as a reward which the detective bureau was authorized to offer, and that in pursuance thereof the detective bureau published the offer upon which this action is based. The bank recognized that and has paid the money into court.

The defendant Dunlop, as assignee of Tooke, claims the reward as having furnished the first information to the bank that Alvord was in Boston. This was undoubtedly true, but it was not information of Alvord's whereabouts that was to entitle the person who furnished it to the reward, but for the arrest or information leading to the arrest and conviction of Alvord. If Tooke had at once communicated with the Boston police Alvord would undoubtedly have been then arrested before he would have had time to leave the hotel, and Tooke would have been entitled to the reward. He, however, called up the bank and gave them the information; but before the bank had time to inform the police and have an officer in Boston Alvord had disappeared. The evidence is undisputed that after all the information that Tooke was able to give as to Alvord's whereabouts the police failed to locate him and had given up the search. Tinker had been ordered back to New York. The information, while locating Alvord in Boston, had not resulted in his arrest, and no information had been furnished, therefore, by Tooke which led to the arrest and conviction of Alvord. The plaintiff then discovered that Alvord was in his house. He at once complied with the terms of the circular by informing the police department of New York of that fact. This information resulted directly in Alvord's arrest, and, therefore, the plaintiff brings himself within the terms of the offer.

What was said in *Howland* v. *Lounds* (51 N. Y. 604) applies to this case : "Now, although Williams may have acted in reference to the reward, and through him information may have reached the

FIRST DEPARTMENT, MARCH, 1905.          [Vol. 102.

defendant as to where the mare could be found, yet as nothing that was said or done by him could with the utmost diligence have led to her recovery before she was in fact recovered by the plaintiff, who also acted in reference to the reward, the service rendered by him, not having led to her recovery, does not entitle him to the reward." It was the information given by the plaintiff that led to Alvord's arrest. Tooke's information did not. Alvord would have been arrested on plaintiff's information if Tooke had given none, but he would not have been arrested on Tooke's information without the information of the plaintiff.

I think that Armstrong had no right to the reward. His claim is based upon the fact that the only reward offered by authority of the bank was the reward for the arrest of Alvord, and that as he made the arrest he was the only one who fulfilled the conditions upon which the reward was based. It is clear that Armstrong acted solely in the discharge of his duty as a police officer of the city of New York, and that his action was not in any sense based upon the offer of the defendant. He was a detective sergeant connected with the police department of the city of New York, and as such it was his duty to arrest persons who had committed crime within that city. He was ordered by his superior officer to proceed to Boston and act upon the information furnished by the plaintiff. He went to Boston. His expenses were paid by the city of New York. What he did he did under the orders of his superior officer, and not upon an acceptance of the offer made by the bank whereby a contract would have been created imposing an obligation upon the bank to pay him the reward. While it may not be correct to say that in no case can a police officer be entitled to receive a reward offered for the arrest of a criminal or for the recovery of stolen property, to entitle any person to recover a reward it must appear that the offer was made to pay the reward and that the person by accepting the offer and performing the conditions established a contractual right to the reward offered. Thus, Judge WOODRUFF in *Fitch* v. *Snedaker* (38 N. Y. 248) says : " To the existence of a contract there must be mutual assent, or in another form offer and consent to the offer. The motive inducing consent may be immaterial, but the consent is vital. Without that there is no contract. * * * An offer cannot become a contract unless acted

upon or assented to." In *City Bank* v. *Bangs* (2 Edw. Ch. 95), a case that has often been cited, the vice-chancellor said : " They were officers of the police in the discharge of their ordinary duty to the public ; and, although instrumental in restoring the property to its rightful owners, yet they were as the mere conduit through which the recovery was passed. Mr. Bangs was the moving cause ; by his means or those which belonged to him the property was recovered ; to his vigilance and determination (or to that of his wife, which is the same thing) the recovery may be fairly attributed.   *   *   *   The criterion in these cases ought to be this : Who is the person that has acquired a knowledge of the facts necessary to a detection or discovery of the things stolen or lost, and has imparted such knowledge with the intent and for the purpose of bringing about a recovery or restoration of the property, taking upon himself the risk and consequences of a failure, if it fails, and acting with a view to the benefit of the reward, if his suspicions and disclosures are well founded and successful ? " And in *Hatch* v. *Mann* (15 Wend. 44) it is stated : " It is even doubtful whether it is consistent with public policy to permit a public officer to receive and retain an extra compensation for his services, even as a voluntary donation, if such extra allowance is founded upon a promise made to the officer previous to the performance of the duty," a doubt which I think would prevent a recovery by this police officer of this reward, even if there was no other claim to it. He did nothing but what he was bound to do in the discharge of his duty as a public officer not acting upon or accepting the offer made by the bank.

The case of *Fargo* v. *Arthur* (43 How. Pr. 193) is not in point. There, when the reward was offered, no person was suspected of having committed the crime either by the company or by the public authorities. A number of persons furnished information which resulted in the arrest of the criminal. The furnishing of this information entitled the persons giving it to portions of the reward, and the court cited as an authority for the division of the reward what was said by Mr. Justice MAULE in *Thatcher* v. *England* (54 Eng. C. L. 254) : " It often happens that there is no one individual who gives information that is in itself useful ; but that several persons give different pieces of information, the whole of which combined leads to the apprehension and conviction of the

offender." In such a case the court was justified in dividing the reward among those who gave such information. But in this case the information that led to the arrest was given by the plaintiff. The knowledge obtained by Tooke was important, and if given promptly to the police officials would have secured Alvord's arrest, but was given too late. Alvord would have been arrested if Tooke had never seen him or communicated the fact that he had seen him in the hotel. Armstrong was acting solely upon the orders of his superior officer in the performance of his duty, and for the services that he rendered he has received his reward from the public.

I think that the case was correctly decided below and that the plaintiff was entitled to the whole reward. It follows that the judgment appealed from must be affirmed, with costs.

VAN BRUNT, P. J., MCLAUGHLIN, HATCH and LAUGHLIN, JJ., concurred.

Judgment affirmed, with costs.

---

NOTE.— The rest of the cases of this term will be found in the next volume, 103 App. Div.— [REP.