## ROGERS v. McCOACH et al.

(Supreme Court, Special Term, Orange County. October, 1909.)

1. INTERPLEADER (§ 8*)—ACTION FOR REWARD—SEVERAL CLAIMANTS.

Where a claimant sued a county for a reward offered for information leading to the arrest and conviction of a criminal, the county could pay the reward into court and have the several claimants substituted in its place as defendants, and thereupon the court could determine all rights to the reward and apportion it equitably among the different claimants whose efforts contributed to produce the result for the accomplishment of which it was offered, provided the efforts of several did so contribute.

[Ed. Note.—For other cases, see Interpleader, Cent. Dig. §§ 8, 9, 11; Dec. Dig. § 8.*]

2. REWARDS (§ 8*)—PERFORMANCE OF SERVICES—AFTER ARREST.

Where a reward is offered for information resulting in the arrest and conviction of a murderer, no information given after the arrest had been accomplished would entitle the informant to share in the reward, though such information may have contributed to the conviction, even to the extent that without it conviction would not have been secured, and hence officers who extracted a confession from such a person after his arrest were not entitled to share in the reward, though the conviction could not have been had without the confession.

[Ed. Note.—For other cases, see Rewards, Cent. Dig. §§ 9-12; Dec. Dig. § 8.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. REWARDS (§ 11*)—PERSONS WHO MAY RECEIVE—PUBLIC OFFICERS.

Public officers, such as policemen, constables, or sheriffs, whose efforts are made in the performance of official duty, are not entitled to share in a reward offered for the apprehension and conviction of a criminal, unless they have rendered some extraordinary service entirely outside the scope of their official duties, and the fact that the county officers offering such reward supposed that public officials could earn it would not affect their rights.

[Ed. Note.—For other cases, see Rewards, Cent. Dig. §§ 14, 15; Dec. Dig. § 11.*]

4. EVIDENCE (§§ 80, 35*)—JUDICIAL NOTICE—DUTIES OF POLICE OFFICERS IN OTHER STATES.

While it cannot be presumed that the statutes of another state are the same as those of New York, making it the duty of police officers to arrest a person within their jurisdiction who may be charged with committing in another state such a crime as murder, and hold him for extradition, it is matter of common knowledge that substantially like provisions exist in all the states, and the court may take judicial notice that the performance of such an arrest would be within the general line of official duty of a police officer in any other state, so that he would not be entitled to a reward offered for the apprehension and conviction of such a person.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 101, 35, 51; Dec. Dig. §§ 80, 35.*]

5. REWARDS (§ 8*)—PERSONS ENTITLED.

Where the information given officials by a person receiving a letter written by one for whose apprehension and conviction a reward was offered was the moving cause of his arrest, and each succeeding step which resulted in his arrest was but the following up of the clue given by such information, the informant was entitled to the reward upon his conviction.

[Ed. Note.—For other cases, see Rewards, Cent. Dig. §§ 9–12; Dec. Dig. § 8.*]

Action by George Clifford Rogers, by his guardian ad litem, William Clifford Rogers, against the County of Orange, in which the defendant county was allowed to interplead John D. McCoach and others. Judgment for plaintiff.

Watts & Cox, for plaintiff.
Graham Witschief, for defendant McGraw.
Henry W. & Russell Wiggins, for defendant Roth.
Taylor, Royce & Royce, for defendant McCoach.
Bacon & Rorty, for defendants Decker and Hock.

MILLS, J. This is an action brought to recover the reward offered by the board of supervisors of the county of Orange for information resulting in the apprehension and conviction of the murderers of Frederick and Willis Olney and Alice Ingerick.

The three persons named were murdered in the town of Wallkill, Orange county, on the 6th of October, 1905. Investigations shortly thereafter made indicated that the murders were committed by one Charles H. Rogers, who lived in the city of Middletown in that county. He left home on the morning of the day of the homicide and did not return. On the 16th of January, 1906, he was indicted by the grand jury of that county, charged with the crime of murder in the first degree in having killed the said Frederick R. Olney. As his whereabouts had not been ascertained, the board of supervisors of that county

on the 19th of December, 1906, passed a resolution which, as amended upon the following day, read as follows:

"Whereas, the murderers of Frederick and Willis Olney and Alice Ingerick are still at large, and therefore be it

"Resolved that a reward of $2,000.00 be and is hereby offered by the Board of Supervisors of Orange County for information that will result in their apprehension and conviction; and be it further

"Resolved that no portion of this reward shall be paid until the guilty party or parties are actually convicted beyond reversal on appeal, of the crime."

The plaintiff, being a young man of about 18 years and residing with his parents in said city, on or about February, 21, 1907, received at his home, by the ordinary postal delivery, a letter addressed on the envelope to George A. Rogers. The letter had evidently been left at the house upon the supposition that it was addressed to the plaintiff, notwithstanding the variance in the initial of "C." to "A." The plaintiff opened the letter, believing it to be addressed to him, and read its contents, which were as follows:

"Madera, Cal. Feb. 22, 1907.

"Dear Brother

"I thought I would write you a few lines to let you know that I am alive I would like to know how all the foaks is How is hattie & the Children whare is hattie will you send me her address dont tell any one whare I am I have been Sick for Six months I would come home if I had money anouf I dont think I will ever get well again will you please write & tell me how all the foaks is but dont tell any one whare I am & Send me hattie's address I hope you are all will tell me all the news I will close for this time. hopping this reaches you Safe                                                            address this way

                                                                "Chas. H. Carpenter
                                                                "Yosemite Hotel
"C. H. R.                                                         Madera Cal."

He had read the accounts published in the newspapers of the homicide, of the offer of reward by the resolution above quoted, and of the fruitless efforts to find the accused. He at once surmised that the letter was written by the murderer, Charles H. Rogers, to his own brother, and that the initials "C. H. R." written at the foot and one side of the letter were so that the brother might surely identify the letter as having come from him. The plaintiff thereupon showed the letter to his father and acquainted him of his conclusion, in which the father concurred. The two at once took the letter to the city police headquarters and delivered it there to the defendant Roth, a policeman, with information as to plaintiff's receipt of the letter and his conclusions as above stated. Roth thereupon communicated the whole matter to the defendant McCoach, the chief of police of that city, who, in turn, communicated with the district attorney of the county and the Pinkerton Detective Agency in New York City, which had been employed by the public authorities in an effort to find the accused. Subsequently, by the advice of the detective agency, a decoy letter was written and mailed by the defendant McCoach at Middletown, addressed to Charles H. Carpenter, Yosemite Hotel, Madera, Cal., as directed in the letter above copied. Arrangements were made to have the letter watched at the Madera post office and the person who might call for

it there arrested; but, after the letter was received at that office, the post master received from a person purporting to be Carpenter a letter directing him to forward his mail to the Los Angeles post office. The detective agency, being informed of this, arranged to have that post office watched. The letter was then forwarded there, and the person who called for it there under the name of Carpenter was arrested from information given by such detective agency, and proved, upon examination and identification, to be the accused, Charles H. Rogers. The defendant Decker was the sheriff of Orange county, and after due requisition obtained from the Governor of the state went to Los Angeles and brought Rogers back with him to Orange county. He was accompanied by the defendant Hock, his deputy or undersheriff. The defendant McGraw was a police officer of the city of Los Angeles, and as such actually arrested Rogers there. The defendant McCoach accompanied Decker and Hock upon the journey to Los Angeles and return. During the return trip the three obtained from the accused Rogers a confession. In October, 1907, he was brought to trial at a Trial Term of the Supreme Court held in that county, and a verdict of guilty of murder in the first degree was at such trial rendered on the 28th of that month. Upon the trial the confession was offered in evidence in behalf of the people and received. The learned justice presiding at the trial instructed the jury, in substance, that, aside from such confession, the evidence was insufficient to warrant a conviction. Appeal was duly taken to the Court of Appeals, where the judgment of conviction was unanimously affirmed in June, 1908. See People v. Rogers, 192 N. Y. 331, 85 N. E. 135. Thereafter, and before the commencement of this action, the convicted man was, pursuant to the conviction, electrocuted. This action was originally begun against the county of Orange, but, by order of interpleader duly made, the county was permitted to pay and did pay into court the reward of $2,000; and the several present defendants, claimants to the reward or portions thereof, were substituted in its place as defendants.

From a careful examination of the authorities cited in the briefs submitted by the learned counsel, I have concluded that the following principles affecting the questions here involved should be regarded as established:

First Principle. This action as it now stands is properly brought and therein the court may determine all rights to the reward, and may apportion the same equitably between different claimants whose efforts contributed to produce the result for the accomplishment of which the reward was offered, provided the efforts of several did so contribute. Fargo v. Arthur, 43 How. Prac. 193, 196; Jones v. Phœnix Bank, 8 N. Y. 228, 233; Howland v. Lounds, 51 N. Y. 604, 609, 10 Am. Rep. 654; Bank v. Bangs, 2 Edw. Ch. 95.

Second Principle. No information given after the arrest had been accomplished can be considered as entitling the informant to share in the reward, although such information may in the end have contributed to the conviction, even to the extent that without it conviction would not have been secured. This proposition was clearly enunciated

120 N.Y.S.—44

by the Court of Appeals in the leading case of Fitch v. Snedaker, 38 N. Y. 248, 250, 97 Am. Dec. 791, in these words:

"No one could therefore claim the reward who gave no information whatever until after the apprehension, although the information he afterward gave was the evidence upon which conviction was had, and, however clear, that, had the information been concealed or suppressed, there could have been no conviction."

In that case the offer of a reward was in substantially the same terms as in this case, viz., there the words defining the service were, "who would give such information as should lead to the apprehension and conviction"; whereas, here the corresponding words are, "that will result in their apprehension and conviction."

Third Principle. Public officers, such as policemen, constables, or sheriffs, whose efforts were made in the performance of official duty, are not entitled to share in the reward. McNeil v. Board of Supervisors, 114 App. Div. 761, 764, 100 N. Y. Supp. 239; Atwood v. Armstrong, 102 App. Div. 601, 607, 92 N. Y. Supp. 596; Hatch v. Mann, 15 Wend. 44; Fargo v. Arthur, 43 How. Prac. 193, 197; Bank v. Bangs, 2 Edw. Ch. 95, 97–105; Gregg v. Pierce, 53 Barb. 387, 391; Reynolds v. Mt. Vernon, 26 App. Div. 581, 50 N. Y. Supp. 473; Id., 164 N. Y. 592, 58 N. E. 1091; People v. Neff, 121 App. Div. 44, 47, 105 N. Y. Supp. 559.

The cases just cited, taken together, leave it in doubt whether a public officer, such as a sheriff, undersheriff, deputy sheriff, constable, or policeman, should under any circumstances ever be permitted to share in such a reward. The negative seems to be asserted in McNeil v. Board of Supervisors, supra, 114 App. Div. 764, 100 N. Y. Supp. 239, Hatch v. Mann, supra, 15 Wend. 44, and Fargo v. Arthur, supra, 43 How. Prac. 197. The affirmative proposition is asserted in Bank v. Bangs, supra, 2 Edw. Ch. 98, upon the authority of Hatch v. Mann, 9 Wend. 262, but the decision of the Supreme Court in Hatch v. Mann, 9 Wend. 262, was reversed by the Court of Errors on appeal in Hatch v. Mann, 15 Wend. 44, where the doctrine was broadly asserted that it would be clearly against public policy to permit such a public officer as a constable to receive a reward for an official service other than the regular compensation provided by law. While this doctrine is stated with approval in Atwood v. Armstrong, supra, and Gregg v. Pierce, supra, yet in those two decisions it is asserted that such a public officer can be permitted to share in such a reward only where he has rendered extraordinary service outside of his official duty. Thus, in the Gregg Case, the sheriff was permitted to receive the reward upon the ground that, while acting in another state under the requisition issued by the Governor of this state, he was not acting as sheriff, and not therefore in his official capacity. I must admit that I cannot perceive the propriety of the distinction attempted to be made by the former General Term in that case, for, if it were a new question, it would seem to me that the sheriff in that case in attempting to recover possession of the escaped convict, who had jumped his bail was simply acting within his official duty, even if he followed him into

another state; and especially I cannot appreciate the expression in the opinion (53 Barb. 388–389) to the effect that:

"If the plaintiff had been so fortunate as to have caught Loop [the escaped convict] in sight of the Elmira jail, before he obtained either of the requisitions hereinafter mentioned, and safely lodged him in said jail, he would have been entitled to the $250 reward from the defendant."

It would seem that in such event the sheriff would have been acting entirely within the strict line of his official duty, and his claim to the reward would have fallen within the condemnation of Hatch v. Mann, 15 Wend. 44. While in the Atwood Case the Appellate Division in the First Department (102 App. Div. 606, 92 N. Y. Supp. 599) declined to go to the extent of declaring "that in no case can a police officer be entitled to receive a reward offered for the arrest of a criminal," that court decided affirmatively that in that case the police officer, Armstrong, who went from New York to Boston upon the information given by the hotel keeper there, and upon such information there arrested Alvord, was not entitled to the reward or any part of it, but gave the entire reward to the hotel keeper, Atwood, who had notified the New York police of Alvord's presence there.

My attention is called to the unreported case of Frank T. Roemer v. John Vail et al., which was decided in 1893 by the then Mr. Justice Cullen, after trial at Special Term in Orange county. I am informed by counsel that in that case the reward was offered by the county of Orange in respect to a murder which had been committed in that county outside of the limits of the city of Middletown; and that Vail and Barrett, to whom the decision of Mr. Justice Cullen awarded a part of the reward, were policemen of that city, and, following up the clue given them by the original informer, had secured the arrest of the accused person within this state, just over the Pennsylvania border, across which he had been induced to come, and that Wenegatz was also a policeman of that city, who had induced one Sarah Brown, charged with complicity in the crime, to make a written confession, which was received in evidence upon the trial, and also that for such services alone each of the three policemen was by the decision given a part of the award, and also that the contention that such public officers are prohibited by principles of public policy or otherwise from sharing in such reward was not made in the case. My respect for that learned jurist is such that if that contention, with the authorities then sustaining it, had been presented to him, I would now feel warranted and indeed required to accept and follow his decision as conclusive, as the same was not reversed or modified upon appeal; no appeal having been taken. In view, however, of the later decisions above quoted, and especially of the fact that that contention was not made in that case, I conclude that the rule must be held to be as above herein stated, viz., that such a public officer is debarred from sharing in such a reward, unless, indeed, he has rendered some extraordinary service in the matter entirely outside of the scope of his official duty. Applying these principles to the facts established by the evidence as above briefly stated, the determination of the right to the reward in this case is plain.

In the first place, it is clear that the defendants Decker, Koch, and McCoach are not entitled to the reward or any portion thereof by reason of their services in procuring the confession. This is clear because the information given by the confession did not contribute at all to the arrest, but was matter transpiring entirely subsequent to that event. Therefore the second principle or rule hereinbefore declared prohibits such services being considered as having in whole or in part earned the reward.

In the next place, it seems equally clear that the service rendered by each of the defendants Roth, McCoach, and McGraw, which contributed to the arrest, was in the line of his official duty as a policeman, and that, therefore, neither one of them can be permitted to share in the reward.

As to the two Middletown policemen, the defendants McCoach and Roth, I cannot perceive that either did anything except what he was bound to do in the performance of his official duty. They doubtless rendered important service in following up the clue furnished by the plaintiff through his disclosure of the letter which he received and information of the attending circumstances; but that it was their official duty to render such service seems to me beyond dispute. If the going of McCoach to Los Angeles with Sheriff Decker to bring the accused man back to Orange county might, upon the authority of the Gregg Case, supra, be deemed to have been an extraordinary service outside of official capacity; it is enough that such service did not, as was true in the Gregg Case, contribute to the arrest or apprehension.

As contended by counsel for the defendant McCoach, it is manifest that in offering the reward the board of supervisors supposed that the law would permit public officials to be eligible to earn and receive the reward, because in the original resolution they expressly provided that no county official should be eligible, and on the following day amended the resolution by striking out such restrictive provision. Their supposition or understanding to the above effect, however, cannot serve to alter the rule of law which makes public officials ineligible to the extent above stated.

It is contended in behalf of the defendant McGraw by his learned counsel that, while he was a police officer in the city of Los Angeles, he owed as such no duty to the county of Orange or the people of this state, and therefore that his action in arresting there the New York criminal was not within the line of his official duty as a policeman of the city of Los Angeles. It does not seem to me that this contention is sound. It cannot be doubted that in this state it is the duty of police officers and other proper local officials to arrest a person within their territorial jurisdiction, who may be charged with having committed in another state such a crime as murder, and hold him for a warrant to be issued by the Governor of this state upon requisition of the Governor of the state in which it is charged that the crime was committed. See Code Cr. Proc. tit. 4, §§ 827–835.

While it cannot be presumed, in the absence of proof, that the statute laws of the state of California are the same as those of New York, yet I think that it is a matter of common knowledge that sub-

stantially like provisions or practice exist in all the states, and that the court may take judicial notice that the performance of such an arrest would be within the general line of the official duty of a police officer in any other state. If, however, the defendant McGraw claims that the service which he rendered upon that occasion was extraordinary and not to be regarded as official, it would seem that the burden rests upon him to specifically prove the statute laws of California in that regard. However, if either counsel deem it necessary to supply such proof, they may have opportunity to do so.

It is manifest that the information given by the plaintiff to the Middletown officers in February, 1907, was the moving cause of the arrest of the murderer. Each succeeding step which resulted in his arrest was but the following up of the clue given by such information. For more than a year the public authorities of the county of Orange and the leading detective agency of the country had been endeavoring to ascertain the whereabouts of the accused man, and, so far as the evidence shows, had failed to obtain the slightest effective clue to the same. The information given by the plaintiff resulted in the arrest in less than two months. If the defendants Roth, McCoach, and McGraw had not been public officials, it would seem that they would be entitled to participate in the reward with the plaintiff, as having, by their acts following the plaintiff's information, contributed in producing the arrest, the result called for by the resolution offering the reward.

The case here, therefore, is that the right of the plaintiff to the reward is clearly established; and that no one of the defendants has shown a right to participate with him therein. This result seems to accord especially with the cases of Atwood v. Armstrong and Bank v. Bangs, supra.

Therefore the decision must be, and is, that the plaintiff is entitled to the reward.