[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner, Debra Lester, has applied for the $20,000.00 reward offered by former Governor William A. O'Neill for information leading to the arrest and conviction of the person or persons who killed Joyce Stockmal. The reward was requested by State's Attorney John Connelly on August 31, 1984, pursuant to General Statutes Section 54-48 and was announced by the then governor on September 4, 1984.
On May 17, 1985, David J. Weinberg was arrested for the crime. After a trial, he was convicted of murder on January 6, 1989. The conviction was affirmed by the Supreme Court of Connecticut on June 5, 1990. State v. Weinberg, 215 Conn. 231. Certiorari was denied by the Supreme Court of the United States on November 13, 1990. Weinberg v. Connecticut, 111 S.Ct. 430.
 I.
General Statutes Section 54-48, the wording of which has remained basically unchanged, reads in pertinent part as follows:
 When any crime punishable by death or imprisonment for more than one year has been committed, the governor, upon application of the state's attorney for the judicial district in which it was committed, may offer, publically, a reward not exceeding twenty thousand dollars, to the person who gives information leading to the arrest and conviction of the guilty person. . .which award shall be paid to the informer by the state, by order of the court before CT Page 2302 which such conviction is had.
The statute was construed in State v. Malm, 143 Conn. 462 (1956). In that case, our Supreme Court said "The terms of the statute and the offer of the reward made pursuant to it are prospective. The reward is for the person. who shall give information leading to the arrest and conviction of the guilty person. The manifest purpose of the statute was to elicit information not already available. It contemplated performance in reliance upon the offer. It was not its purpose to provide recompense to one who had wholly performed before the offer was made." Id. at 466.
In the instant case, the State opposes the petitioner's application. The ground for the State's opposition is that the petitioner gave her statement to the police on August 17, 1984 several weeks before the reward was announced and, further, that her testimony at the trial did not vary from her statement.
A hearing on the petitioner's application was started in the afternoon of January 14, 1991. On that date she testified. The hearing was then continued until January 25, 1991. At the request of the petitioner's attorney, the continuance date was advanced to February 1, 1991. When the hearing resumed on February 1, 1991, neither the petitioner nor her attorney appeared, On February 1, 1991, the State submitted what it represented to be all the statements and reports pertaining to the petitioner's actions with the police proceeding the arrest of David J. Weinberg. From the petitioner's testimony and the State's documentary evidence, the court finds that the facts set forth below were established.
On August 17, 1984, the Petitioner made herself known to the state police as someone with special knowledge and gave her initial statement at the barracks in Southbury. This statement involved an account of a ride from Oxford to Woodbury that the petitioner, on August 4, 1984, had taken with Weinberg including a stop near the Pomperaug River where he rummaged through the debris of a former camp fire. The police records state that as a result of this statement and an interview of Weinberg on August 20, 1984, he became a suspect. On August 31, 1984, the petitioner gave a second statement concerning some of Weinberg's words and behavior. Both of these statements antedated the announcement of the governor's reward.
When the reward was announced on September 4, 1984, the petitioner saw it in the newspaper and heard about it "around town." Subsequent to the offer of the reward, the petitioner gave a third statement on October 4, 1984 which dealt with possible causes for a stain on a T-shirt that she thought that she had seen in Weinberg's car. The final item, that might be considered as a statement from the petitioner, was a police report dated October CT Page 2303 18, 1984. This report described the police going with the petitioner to reconstruct the movements she and Weinberg had taken on August 4, 1984, as set forth in her initial statement, particularly with regard to the site of the camp fire. At the site, the police told the petitioner that they were attempting to identify certain items found there including a piece of blue felt or flannel-like material. The petitioner stated that Weinberg always had a blue blanket in his car. She described the color of the blanket as being very close to the blue of a jacket worn by her girlfriend who had accompanied them. The police report notes that the girlfriend's jacket appeared to be similar in wear to the material observed in the fire debris.
The conversations with the petitioner on October 4, and October 18, 1984 were initiated by the police. Aside from the conversations, other police-initiated activities resulted in the petitioner authorizing a release on September 6, 1984 of the telephone records for toll calls made on her telephone in the preceding July and August and signing a consent to search on October 11, 1984 whereby samples of her hair were taken for comparison with hair samples found in Weinberg's vehicle.
The court has also examined the petitioner's testimony at the trial. To a great extent, her testimony conformed to the statement that she gave on August 17, 1984. With respect to the blue blanket only a few questions were asked as shown by the following excerpts from the direct and cross examinations.
Direct examination by the state's attorney:
 Q: Do you know whether or not David carried a blanket in his car?
A: Yes, he did.
Q: Could you describe it?
A: It was blue.
Q: Where did he keep it, do you know?
A: In the back seat?
Cross examination by defense counsel.
 Q: Let me ask you about the blanket. You told us something about a blue blanket. Weren't you with David in his car in 1983, the year before your trip to Oneonta, New York, CT Page 2304 when David took that blanket out of his car and used it to wrap up a woman who had been badly injured in a motorcycle accident?
A: I was not with him.
Q: You were not?
A: No.
 Q: Isn't it a fact that the blanket that David used to carry in his car hasn't been in his car for a year before you made that trip to New York?
A: I don't remember.
 II.
In State v. Malm, supra at 464-65, our Supreme Court decided that the language of Section 54-48 meant that the governor's offer of a reward rested upon the contractual principles of offer and acceptance. To recover a reward, a claimant must show that because of it he was induced to give information sufficient to justify an arrest which, in turn, led to a conviction. Tobin v. McComb, 156 S.W. 237, 240 (Tex.Civ.App. 1913).
The petitioner's statements of August 17 and August 31, 1984, having been made before the reward was announced, obviously do not qualify. State v. Malm, supra at 466. And, although Section54-48 is supposed to be construed equitably, Malm, supra at 467, her activities, after the reward was announced, do not, in the court's opinion, put her in any better position. These activities were not voluntary disclosures of new information. Rather, they were responses to requests from the police for specific items or the identification of specific items or to reconstruct what she had told them earlier.
When a governmental reward is offered for information leading to the arrest and conviction of the perpetrator of a particular crime, both the arrest and the conviction must result from the information obtained. Hilliard v. Board of Supervisors of Spotslvania County, 195 S.E. 481, 484 (Va. 1938). Having found that the information supplied by the petitioner antedated the reward and, therefore, could not qualify in the matter of Weinberg's arrest, the court need not be concerned with the effect of the information on his conviction. See Williams v. West Chicago St. R. Co., 61 N.E. 456, 457 (Ill. 1901); Rogers v. CT Page 2305 McCoach, 120 N.Y.S. 686 (Supreme Court Orange County 1909).
 III.
The petitioner's application is denied.
BARNETT, J.